INSURANCE COMPANY OF NORTH AMERICA, Appellee,

v.

TRAVELERS INSURANCE COMPANY, Appellant.

[Cite as *Ins. Co. of N. Am. v. Travelers Ins. Co.* (1997), 118 Ohio App.3d 302.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 70147 and 71044.

Decided Feb. 18, 1997.

*Brown, Bartunek & Worthing* and *Thomas C. Brown,* for appellee.

*Ziegler, Metzger & Miller* and *Anthony J. Damelio, Jr.,* for appellant.

JAMES M. PORTER, Judge.

Defendant-appellant Travelers Insurance Company appeals from the trial court's order granting summary judgment in favor of plaintiff-appellee Insurance Company of North America ("INA") holding that plaintiff INA was entitled to recover from Travelers $100,000 that INA had paid to settle a claim against Travelers and INA's insured, Morse Diesel. Travelers claims that the trial court erred by not holding that INA's recovery was barred by the doctrines of waiver and promissory estoppel, since INA undertook the defense of Morse without a reservation of rights and, in any event, INA was obliged by its own policy to defend and indemnify Morse from the claim in question. For the reasons hereinafter stated, we find merit to the appeal and reverse.

Morse acted as the general contractor for the Marriott/Society Center Project in downtown Cleveland. Morse subcontracted with Otis Elevator Company to install elevators and related structures on the project. As part of their agreement, Otis agreed to indemnify, defend, and hold Morse harmless from Otis's work on the project and make Morse an additional insured on Otis's insurance. The contract between Morse and Otis is not in the record.

Morse was named as an additional insured on Otis's policy from INA called an "Owners and Contractors Protective Liability Insurance Policy," which contained the following insuring agreement:

"1. Insuring Agreement.

"a. We [INA] will pay those sums that the insured [Morse] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. * * * The 'bodily injury' or 'property damage' must be caused by an occurrence and arise out of:

"(1) Operations performed for you [Morse] by the 'contractor' [Otis] at the location specified in the Declarations [Marriott/Society Project]; or

"(2) Your [Morse] acts or omissions in connection with the general supervision of such operations [performed by Otis]."

Additionally, the INA policy contained an "other insurance" clause, stating:

"The insurance afforded by this Coverage Part is primary insurance and we [INA] will not seek contribution from any other insurance available to you unless the other insurance is provided by a 'contractor' other than the designated 'contractor' for the same operation and job location designated in the Declarations."

Morse was also an insured under a comprehensive general liability policy issued by Travelers providing coverage for bodily injury and property damage arising out of an "occurrence" in the "covered territory."

An Otis employee, Bruce Brewer, was injured at the project on August 8, 1991, during the period covered by both the Travelers and INA policies. He slipped and fell when using an exit ramp to the project constructed by Morse. Brewer submitted a claim to Morse for his injuries in October 1991.

Morse forwarded the claim to Travelers. Travelers opened up a claim file and commenced an investigation. A claims adjuster for Travelers tentatively concluded in January 1992 that Morse "is 80–85% negligent because insured should have created a nonslip/skid ramp—all the way down instead of only partially. Insured obviously aware of slippery condition because of nonskid material partially placed."

Brewer filed a complaint in the common pleas court on June 28, 1993. He asserted that he was injured as he "descend[ed] a construction exit ramp at the job site for the construction of the Marriott Hotel in Cleveland, * * * [as] he slid and fell on said ramp that was improperly and negligently constructed and maintained by [Morse] * * *."

Morse forwarded the complaint to Otis on June 29, 1993. Otis then sent the complaint to INA and requested that INA defend the action on behalf of Morse. Otis informed Morse and Travelers on August 6, 1993 that INA had assumed the defense of Morse in the Brewer action. When INA assumed the defense it did not assert any reservation of rights under its policy. Because defense of the case had not been tendered to Travelers and INA had served no reservation of rights, Travelers closed its file on the Brewer claim.

INA took full charge of the defense of the action for the ensuing year, retained counsel to defend Morse, and went forward with a full-scale investigation, discovery, and preparation for trial. However, INA ultimately concluded that it

had no coverage on the risk because the Brewer accident occurred at a ramp where Otis was not performing any operations for Morse. On July 29, 1994, INA demanded in writing that Travelers assume the defense and indemnity of Morse. The Brewer trial was set for September 20, 1994. INA informed Travelers in the July 29 letter that "probable liability" exists with "substantial verdict exposure." INA suggested that if Travelers did not accept the tender, it should cooperate with INA in its efforts to settle the case or INA would pursue a declaratory judgment and indemnification action.

Travelers declined to assume the defense and explained in a letter dated August 31, 1994 that since INA assumed the defense without a reservation of rights, it waived tender of the suit and indemnity and, therefore, Travelers was under no obligation to participate. Travelers also stated that "we will not agree to any reasonable settlement because we do not have privy [sic] to the facts, damages or prior negotiations involved." Travelers advised: "Certainly, it is in your company's best interest to settle this matter. Your failure to settle, for a reasonable figure, may put you in a position of acting in 'bad faith' with the defendants you are presently defending."

INA replied on September 12, 1994, offering additional materials to allow Travelers to make a final determination on the matter. By letter dated September 21, 1994, INA advised that the case was set for trial on September 28, and enclosed its claim file, attorney's evaluations, and various discovery materials. INA sought Travelers' approval of a settlement between $80,000 and $150,000 as fair and reasonable, which Travelers declined. On November 4, 1994, INA advised Travelers that INA had settled the Brewer action for $100,000.

INA brought the instant suit for declaratory judgment on March 8, 1995 against Travelers to recover indemnification from Travelers for $100,000 incurred in the Brewer settlement plus attorney fees and expenses incurred in the defense. Travelers denied its duty to indemnify and asserted affirmative defenses, including waiver and estoppel from lack of any reservation of rights and INA's status as a "volunteer."

The parties filed cross-motions for summary judgment. INA's position was that Travelers, as the primary insurance carrier for Morse, was unjustly enriched by INA's defense and settlement of the Brewer action. INA denied "volunteer" status. Travelers argued that INA could not seek indemnification because the doctrines of promissory estoppel and waiver precluded recovery absent a reservation of rights to preserve its policy defenses.

After the parties filed responsive briefs, the trial court, on December 29, 1995, granted INA's motion and denied that of Travelers. In its judgment entry, the court stated:

"[Plaintiff], Insurance Co. of North Americas [*sic*] motion for summary judgment is granted. [Defendant], [Travelers] would be unjustly enriched if this court found them, as the insurance co. w[ith] primary coverage, to have no liability in this matter. The legal theory of estopple [*sic*] [and] waiver exists as a public policy to protect an insured against an insurer refusing to defend in the midst of litigation. This case is between two parties on equal financial ground. [Defendant's] motion for summary judgment is denied."

Travelers appealed to this court, but we remanded the cause to the trial court for a determination of damages. The trial court, in a July 1, 1996 entry, awarded $100,000 to INA, but denied its claim for cost of defense, attorney fees, and expenses. This timely appeal ensued, and the case is now before us on the merits.

Travelers' assignments of error will be discussed together where they are related or facilitate the discussion:

"III. The trial court erred by holding that INA was not obligated, pursuant to the language contained in its policy of insurance, to defend and indemnify Morse Diesel in connection with the Brewer lawsuit.

"IV. The trial court erred by holding that Travelers was the primary and sole insurer responsible for the defense and indemnification of Morse Diesel in connection with the Brewer lawsuit."

Under Civ.R. 56, summary judgment is proper when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

It is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1987), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–140.

However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Celotex, supra,* 477 U.S. at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 273–274. In accordance

with Civ.R. 56(E), "a nonmovant may not rest on the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Supreme Court of Ohio modified the summary judgment standard as was applied under *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Currently, under the new standard, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher* at 296, 662 N.E.2d at 276.

This court reviews the lower court's granting of summary judgment *de novo*. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("We review the judgment independently and without deference to the trial court's determination"). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144.

We believe that a separation and restatement of the issues will be helpful to an understanding of the discussion that follows: (1) was the Brewer action covered by the INA policy; (2) did INA have a duty to defend Morse under INA's policy; (3) if so, did INA by undertaking the duty without a reservation of rights waive its right or estop itself from later claiming a noncoverage defense under its policy; (4) did INA act as a volunteer in settling the Morse claim after it discovered and asserted its noncoverage defense; (5) was Travelers prejudiced by INA's one-year delay in asserting its noncoverage defense?

In its Assignment of Error III, Travelers asserts that the INA policy provided primary coverage, which obligated INA to defend and indemnify Morse from the Brewer claim. Conversely, in Travelers' Assignment of Error IV, it submits that it was not the primary insurer and solely responsible for the defense and indemnification of Morse in connection with the Brewer lawsuit. We first address whether the Brewer claim was covered by the INA policy.

Generally, insurance contracts must be construed in accordance with the same rules as other written contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1101–1102. Although

juries are allowed to determine related factual matters, the interpretation of insurance contracts in the first instance is one of law for the trial court. *Leber v. Smith* (1994), 70 Ohio St.3d 548, 553, 639 N.E.2d 1159, 1163. Therefore, a court is precluded from rewriting a contract when the intent of the parties is evident, *i.e.*, if the language of the policy's provisions is clear and unambiguous, the court may not resort to construction of the language. *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 167, 10 OBR 497, 500, 462 N.E.2d 403, 406–407; *Hybud Equip. Co., supra*, at 665, 597 N.E.2d at 1101–1102.

■ INA's insuring agreement required only it to indemnify Morse for bodily injury caused by an occurrence arising out of:

"(1) Operations performed for you [Morse] by the 'contractor' [Otis] at the location specified in the declarations; or

"(2) your [Morse's] acts or omissions in connection with the general supervision of such operations [*i.e.*, performed by Otis]."

Subpart (1) states, in essence, that INA will defend and indemnify Morse for any injury caused by operations performed for Morse by Otis at the construction site. Therefore, INA claimed that it had no duty to cover Morse because the employee's injury occurred on an exit ramp to the construction site, not in any area where Otis was then performing subcontracting work for Morse, *i.e.*, it did not arise out of "operations performed for you by the contractor."

Travelers argues for a broader concept, that is, subpart (1) means that Morse is insured against any injury occurring as a result of Otis's presence on the job site due to its role as a contractor, regardless of whether the injury occurred somewhere else on the job site or only in that work area encompassing Otis's installation of elevators.

We conclude that the trial court implicitly agreed with INA's interpretation of subpart (1), that coverage applied only if the injury occurred on Otis's site where it was performing operations. We see no reason to overturn that finding. We believe that the only reasonable interpretation is that the parties intended that Otis would insure Morse against any acts of negligence committed by Otis or in its area of operations.

■ The Declarations to the INA policy cover "work performed under contract no.(s) 430372–3; 686212–20; 686386–7 Marriott & Society Tower." By linking the policy to the specific subcontracts, the parties obviously intended that the INA policy would cover negligent acts committed in conjunction with Otis's work on the construction site. Were we to accept Travelers' interpretation of subpart (1), we would have to find coverage based solely on Otis's presence at the construction site, regardless of who caused the accident or where it occurred.

This would lead to an unreasonable result not warranted by a plain reading of the INA insuring agreement.

We reach a similar conclusion on subpart (2). That provision, reasonably construed, provides that INA will insure Morse against any injury claims resulting from Morse's general supervision of Otis's work ("such operations") on the construction site. The plain meaning of subpart (2) requires a nexus between Otis's subcontract work ("operations") and Morse's oversight as the general contractor. In other words, Morse, as the general contractor, must be negligent in its supervisory capacity respecting Otis's operations. Negligent erection of entrance and exit ramps by Morse, while done in a supervisory capacity over the general construction site, was not done in a supervisory capacity specifically related to Otis's subcontracting operations. To hold otherwise would sanction coverage for acts beyond the scope of Otis's performance, which would expansively read coverage into the policy beyond the parties' agreement.

Accordingly, we find that the trial court did not err, as a matter of law, by finding that INA's coverage did not extend to the Brewer claim. However, that does not end the matter. The fact remains that INA did assume the defense of the case because the duty to defend may arise independently of the obligation to indemnify as the following discussion discloses.

The Supreme Court stated as follows in *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, paragraph two of the syllabus:

"The test of the duty of an insurance company, under a policy of liability insurance, to defend an action against an insured, is the scope of the allegations of the complaint in the action against the insured, and where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured."

The Supreme Court, when confronted with a complaint that failed to clearly bring the matter within the coverage of the policy at issue, revisited the *Trainor* concept in *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, and held as stated in the syllabus:

"Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."

The rule announced in *Willoughby Hills* was reaffirmed in *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 586, 635 N.E.2d 19, 23, where the court stated that an insurer has an "absolute duty to assume the defense of the action where the underlying tort complaint states a claim which is potentially or arguably within the policy coverage."

The essential Brewer allegations of negligence were set forth in the second paragraph of the complaint, which stated in pertinent part:

"On or about August 8, 1991, while this Plaintiff [an Otis employee] was descending a construction exit ramp on the job site for the construction of the Marriott Hotel in Cleveland, Cuyahoga County, Ohio, he slid and fell on said ramp that was improperly and negligently constructed and maintained by the Defendant [Morse] and, as a direct and proximate result thereof, sustained various injuries * * *."

Since it is arguable that Morse constructed the ramp for Otis's use at Otis's "job site," the Brewer claim about Morse's negligence potentially brought the action within the coverage of subpart (2) of INA's policy. It should also be recalled that the "other insurance" provision in INA's policy declared that it was "primary insurance" and that INA "will not seek contribution from any other insurance available to" Morse. INA, therefore, was obligated to assume Morse's defense under this scenario in accordance with *Sanderson, Willoughby Hills,* and *Trainor, supra.* That is exactly what happened. INA assumed the defense and so advised Travelers and Morse in August 1993 without any reservation of rights as to noncoverage under its policy. "A unilateral reservation of rights is a notice given by the insurer that it will defend the suit, but reserves all rights it has based on non-coverage under the policy." *Trainor, supra,* 33 Ohio St.2d at 45, 62 O.O.2d at 404, 294 N.E.2d at 877. Since no such notice was given, Travelers closed its file on the Brewer claim.

Of course, INA was free, when it undertook the defense or during the course of discovery, to bring a declaratory judgment action for "purposes of adjudicating its duty to defend and/or indemnify * * * even where the underlying tort complaint alleges conduct within the coverage * * *." *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 112–113, 30 OBR 424, 428, 507 N.E.2d 1118, 1122, and paragraph one of the syllabus. INA did not follow that prudent course.

Moreover, the obligation to defend continues only until the claim is confined to a theory of recovery not covered by the policy. *Great Am. Ins. Co. v. Hartford Ins. Co.* (1993), 85 Ohio App.3d 815, 818, 621 N.E.2d 796, 798–799. An insurer's duty to defend, therefore, is absolved once it is determined that there is no possibility of coverage under the policy based on the allegations in the complaint. *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio

St.3d 65, 67–68, 31 OBR 180, 181–182, 509 N.E.2d 74, 75–76; *Helman v. Hartford Fire Ins. Co.* (1995), 105 Ohio App.3d 617, 625, 664 N.E.2d 991, 996, fn. 2; *Panzica Constr. Co. v. Ohio Cas. Ins. Co.* (May 16, 1996), Cuyahoga App. No. 69444, unreported, at 9, 1996 WL 257470.

The duty-to-defend principle applies as well to situations where an insured has coverage with both primary and secondary insurers. Under those circumstances, "a primary insurer violates its duty to defend at its own peril, and * * * its breach of that duty will make it liable for anything the secondary insurer had to pay in a good-faith settlement of the claim as a result of the primary insurer's breach of that duty." *Sanderson, supra,* 69 Ohio St.3d at 587, 635 N.E.2d at 24, citing *Aetna Cas. & Sur. Co. v. Buckeye Union Cas. Co.* (1952), 157 Ohio St. 385, 392, 47 O.O. 270, 273, 105 N.E.2d 568, 571. This result is necessary because "[b]y unjustifiably refusing to defend an action, the [primary] insurer voluntarily forgoes the right to control the litigation and the insured may make a reasonable settlement without prejudice to the insured's rights under the insurance policy." *Sanderson, supra,* paragraph two of syllabus.

Therefore, an insurer that provides secondary coverage is not a mere volunteer without the right of recovery from the primary insurer. *Aetna Cas. & Sur. Co., supra,* 157 Ohio St. at 393, 47 O.O. at 273–274, 105 N.E.2d at 572. The primary insurer cannot escape liability by simply refusing to defend the action and thus denying coverage. Rather, "applying the principles of equity and natural justice," the secondary insurer possesses an equitable right to recover from the primary insurer, as well as a right to recover by way of subrogation under the policy. *Id.* at 393–394, 47 O.O. at 273–274, 105 N.E.2d at 572. Followed in *Hartford Ins. Co. v. Nationwide Ins. Co.* (Aug. 27, 1992), Franklin App. No. 92AP–187, unreported, at 4, 1992 WL 214344; *Nationwide Mut. Ins. Co. v. Gen. Acc. Fire & Life Assur. Corp.* (1970), 23 Ohio App.2d 263, 266, 52 O.O.2d 416, 418, 262 N.E.2d 885, 887 (the secondary insurer "must prove that it gave proper and timely notice to the party from which recovery is sought that it was liable to respond").

INA argues that Travelers expressly disclaimed its duty to defend, but we find that this argument overstates the facts. Undeniably, INA informed Travelers by way of Morse that it would assume the defense of the employee's suit, and it did so without reserving its rights to deny coverage at a later date. At the point at which INA assumed the defense, it did so as a volunteer (having failed to reserve its rights), not as a result of Travelers' wrongful refusal to defend. Hence, *Aetna Cas. & Sur. Co., supra,* is distinguishable on its facts, *i.e.,* there was no wrongful refusal by Travelers.

In the present case, INA contends that it was a secondary insurer to Travelers, the primary insurer, and therefore entitled to recover from Travelers. However, as noted, the defense of the case was never actually tendered to Travelers when suit was filed. Travelers was merely advised that INA had assumed the defense without a reservation of rights. Travelers closed its file. It was not until a year later (two months before trial), that INA claimed that its policy did not cover the accident and tendered the defense to Travelers, which refused to defend the Brewer action against Morse. INA continued settlement negotiations and ultimately paid out $100,000 as a settlement. INA, in reliance on *Sanderson* and *Aetna Cas. & Sur. Co., supra*, argues that it was equitably entitled to recover its settlement payment from Travelers. However, we find that INA's claim to standing is logically and legally flawed. It cannot, on the one hand, contend that it has no coverage on its policy and then, on the other, contend that it was only secondarily liable after Travelers.

The trial court's judgment apparently found that INA timely tendered defense of the Brewer suit to Travelers, although this point is less than conclusive. INA has not below, or in this court, made any attempt to justify the late tender of the defense other than to say it undertook Morse's defense solely as an accommodation to its insured. Its affidavit in support of its motion for summary judgment simply states: "[T]hrough investigation and discovery, it was determined that the fall of [the employee] * * * took place on a ramp at an entrance/exit to the work site * * * not in the area of any work being performed by Otis * * *. The ramp was constructed, it was determined through investigation and discovery, under the direction of Morse Diesel * * *." It fails to state *when* or *how* during investigation and discovery it first learned that the claim was beyond the scope of its coverage.

Furthermore, INA gives no indication why it would take one year to determine something that any diligent insurance company would, as a matter of good practice, determine at the outset of any demand for a defense. This weighs heavily against a party seeking equitable relief, as INA does here, because of the ancient maxim that "[e]quity aids the vigilant, not those who slumber on their rights." *McPherson v. McPherson* (1950), 153 Ohio St. 82, 91, 41 O.O. 151, 155, 90 N.E.2d 675, 680; *Williams v. Erie Ins. Group* (1993), 86 Ohio App.3d 660, 665, 621 N.E.2d 770, 773; *Connelly v. Morris* (1955), 102 Ohio App. 544, 546, 3 O.O.2d 84, 85, 130 N.E.2d 251, 253. This maxim "constitutes a universal principle [which] may be used to weigh the merits of competing equities." 41 Ohio Jurisprudence 3d (1983) 300, Equity, Section 70.

In any event, the only way that INA could recover for its subsequent payment of $100,000 was for the court to hold that INA was a secondary insurer. That status, however, is compromised by the "other insurance" provision in INA's

policy, which stated: "The insurance afforded by this Coverage Part is primary insurance and [INA] will not seek contribution from any other insurance available to you * * *." If INA was truly a secondary insurer, this operated on its face as an express contractual waiver of any right by INA to recover from Travelers, the "other insurance" available to Morse.

Moreover, given INA's belated position that Brewer's claim was not covered under its policy, a position with which we concur, INA could not claim for purposes of indemnification that it was a secondary insurer. Yet the trial court apparently found that Travelers was the primary insurer and INA was the secondary insurer entitled to equitable reimbursement by reason of filling Travelers' primary role. With this conclusion, we cannot agree. Under the peculiar circumstances of this case, we find that INA was a volunteer and not entitled to recover from Travelers.

The leading case on this subject is *Farm Bur. Mut. Auto. Ins. Co. v. Buckeye Union Cas. Co.* (1946), 147 Ohio St. 79, 33 O.O. 259, 67 N.E.2d 906, which dealt with concurrent or co-insurers each obligated to pay its proportionate share of the insured loss but no more. Plaintiff insurer, despite knowledge of defendant insurer's refusal to pay its share, proceeded to pay the "entire loss—a thing which by the terms of its own policy it was not obligated to do." The Supreme Court, in refusing to allow plaintiff to recover, stated at 89–90, 33 O.O. at 263, 67 N.E.2d at 911:

"Thus, with knowledge of the facts and without legal liability therefor the plaintiff included in its payment the proportion for which the defendant alone was liable. Under these circumstances the plaintiff manifestly became a volunteer and hence is not entitled to contribution. *The plaintiff stresses the fact of the defendant's liability for the latter's proportion of the loss. This, of course, is important. But of controlling importance, so far as the two insurance companies alone are concerned, is the fact that the plaintiff was not liable for the defendant's proportion of the loss.* It must be remembered that this is not a case in which each insurer is liable for the entire loss; rather it is one in which the liability of each insurer is expressly limited to its proportion of the loss." (Emphasis added in part.)

In the present case, plaintiff INA also emphasized Travelers' obligation for the loss and its unjust enrichment, but "of controlling importance, so far as the two insurance companies alone are concerned, is the fact that [INA] was not liable for" Travelers' obligation to cover the loss. It was a volunteer.

These principles were more recently followed in *Amerisure Cos. v. Statesman Ins. Co.* (1991), 77 Ohio App.3d 239, 601 N.E.2d 577. Amerisure insured Parkwood, the manufacturer of mobile homes, for the period from December 1980

to March 1982. The manufacturer was insured by other carriers for earlier periods. When the purchasers filed a complaint against the manufacturer, based upon the presence of a poisonous chemical (formaldehyde) in the home, Amerisure assumed the defense of the manufacturer and thereafter settled the claim. Amerisure then filed an action against the manufacturer's prior insurers, seeking contribution for costs incurred in settling the case. Summary judgment was granted in favor of the other insurers on the grounds that the purchasers' claims were barred by the appropriate statute of limitations. The appellate court affirmed, stating as follows:

"Although the claims against Parkwood were barred by the statute of limitations, Amerisure settled those cases for $30,000. Amerisure now seeks contribution from Statesman and Safeco for its costs of settlement.

"Paragraphs five, six and seven of the syllabus in *Farm Bur. Mut. Auto. Ins. Co. v. Buckeye Union Cas. Co.* (1946), 147 Ohio St. 79, 33 O.O. 259, 67 N.E.2d 906, state as follows:

" '5. The doctrine of contribution rests upon principles of equity.

" '6. One who, with knowledge of the facts and without legal liability, makes a payment of money, thereby becomes a volunteer.

" '7. Equity will not aid a volunteer.'

"Therefore, any sum paid beyond a legal obligation is the act of a mere volunteer, giving rise to no cause of action for contribution. *Fireman's Fund Indemn. Co. v. Shelby Mut. Cas. Co.* (1953), 95 Ohio App. 88, 52 O.O. 423, 117 N.E.2d 477.

"Amerisure, with knowledge of the facts, settled the cases filed by Burton and Truesdell against Parkwood. Because the actions against Parkwood were barred by the statute of limitations found in R.C. 2305.10, Amerisure had no legal obligation to make a payment to the plaintiffs in those cases. Under these circumstances, Amerisure acted as a volunteer in settling the cases against Parkwood and is not entitled to contribution. See *Buckeye Union Ins. Co. v. Allstate Ins. Co.* (Feb. 23, 1981), Ashtabula App. No. 1017, unreported, 1981 WL 4451."

"There is no cause of action for contribution for any sum paid beyond a legal obligation to pay." *Panzica Constr. Co. v. Ohio Cas. Ins. Co.* (May 16, 1996), Cuyahoga App. No. 69444, unreported, at 10, 1996 WL 257470, citing *Amerisure, supra; Buckeye Union Ins. Co. v. Allstate Ins. Co.* (Feb. 23, 1981), Ashtabula App. No. 1017, unreported, at 3 (Buckeye paid entire loss, with knowledge of facts, "and yet paid all the damages for which Allstate was alone liable * * *. Buckeye became a volunteer and is not entitled to reimbursement by Allstate").

In the instant case, INA determined at least by July 1994 that it had no coverage on the Brewer claim against Morse because the injury did not arise from Otis's operations or from supervision by Morse at the Otis site. Despite this knowledge, INA continued its settlement negotiations after Travelers refused to assume Morse's defense. We recognize that INA was in a "bad faith" predicament that counselled against withdrawing from the case, but that was a situation of its own making because of its lack of diligence in failing to reserve its rights and unexplained delay in determining its coverage obligations. Since INA's own position was that it was under no legal obligation to make payment on the Brewer claim, it acted as a volunteer when it provided the settlement funds. The trial court erred in relying on equitable principles to hold that Travelers was bound to indemnify INA because the ancient maxim of equity applies: "Equity will not aid a volunteer."

We therefore sustain Assignments of Error III and IV.

"I. The trial court erred by holding that INA is not precluded by the doctrines of estoppel and waiver in seeking indemnity from Travelers.

"II. The trial court erred by holding that INA was not precluded from seeking indemnity from Travelers based upon the doctrine of promissory estoppel."

Travelers' first and second assignments of error are also interrelated and will be treated together. These assignments challenge the trial court's conclusion that Travelers could not rely on the principles of estoppel and waiver in arguing that once INA had assumed Morse's defense without a reservation of rights, it had an obligation to continue it.

As a general proposition, the doctrine of waiver cannot be employed to expand coverage of an insurance policy. *Hybud Equip., supra*, 64 Ohio St.3d at 668, 597 N.E.2d at 1104, citing 16B Appleman, Insurance Law and Practice (1981) 579, Section 9090. The reasons usually addressed in support of the general rule that waiver and estoppel cannot extend coverage of an insurance policy are threefold: (1) a court cannot create a new contract for the parties; (2) an insurer should not be required to pay for a loss for which it charged no premium; and (3) a risk should not be imposed upon an insurer which it might have denied. *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.* (1994), 93 Ohio App.3d 292, 299, 638 N.E.2d 174, 179. However, as also noted in *Turner Liquidating*, there are well-established exceptions to this general rule when the insurer undertakes the defense without a reservation of rights (as INA did here). That court stated at 299–300, 638 N.E.2d at 179–180:

"An insurer should not be able to avoid liability under all circumstances in which it voluntarily relinquishes a known right or induces another into changing

his position based upon reliance on the insurer's conduct when the insured is prejudiced by such reliance. In cases of the insurer's misrepresentation made at the policy's inception, the insured has been prohibited from procuring the coverage he desired. In cases where the insurer represents the insured without a reservation of rights, the insured may be prejudiced by the legal strategy adopted by the insurer. Absent a reservation of rights, the insurer should not be able to terminate its representation of the insured regardless of when it concludes it is not required to defend its insured. To ignore the actions of the insurer would be an 'unfortunate triumph of form over substance.' *Harr* [*v. Allstate Ins. Co.* (1969)] *supra*, 54 N.J. [287] at 307, 255 A.2d [208] at 219.

"If the insurer is saddled with coverage it may not have intended or desired, it is of its own making. The insurer has the ability to protect itself against such claims by ensuring that its customers receive the coverage they request or by entering a defense of a claim that may not be covered by the policy only after reserving its right to raise policy defenses at a later time. Waiver and estoppel should apply only in those cases where there is a clear misrepresentation of fact or when the insurer provides a defense without reserving its rights for a period sufficient to prejudice the insured's ability to conduct its own defense. Accordingly, we find that an exception to the general rule that waiver and estoppel cannot be used to extend the coverage of an insurance policy exists when the insurer provides a defense to the insured without reserving its rights under the policy for such a period of time as to prejudice the insured, or when the insurer or its agents misrepresent the extent of coverage the insured is purchasing. If we were to flatly find that estoppel was not available to extend the coverage of an insurance company, there may be no recourse for an insured whose insurer withdraws its defense the day before trial.

"Applying these rules to the case at bar, we find the trial court erred in granting St. Paul's Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. Presuming that all of Turner's allegations are true, it could be inferred that St. Paul knew that the claim was outside the policy's coverage but chose to relinquish its right to waive this claim. While the trier of fact may well choose not to make that inference, we see no reason why an inflexible rule of law should preclude it from doing so.

"The same is true of Turner's estoppel claim. It alleges that St. Paul provided a defense for nearly one year without a reservation of rights. As a result of St. Paul's providing a defense for this period, Turner alleges it relied on this defense and did not conduct an investigation of the claim, provide its own defense, or attempt to settle the claim. Allegedly, these actions prejudiced Turner. Providing a defense for nearly one year without reserving its rights may give rise to a claim of estoppel preventing St. Paul from raising the lack of coverage, in this

case. As Turner has pled sufficient facts to permit recovery under the doctrines of equitable estoppel and waiver, the court erred in granting St. Paul's Civ.R. 12(B)(6) motion. Accordingly, Turner's first and second assignments of error are well taken."

Travelers maintains that the present case falls squarely within the scope of the foregoing principles. The Supreme Court's decision in *Motorists Mut. Ins. Co. v. Trainor, supra*, 33 Ohio St.2d 41, 294 N.E.2d 874, paragraph one of syllabus, lends support to that conclusion:

"An insurance company, which by contract is obligated to defend its insured in a negligence action, may defend in good faith without waiving its right to assert at a later time the policy defenses it believes it has, *provided that it gives its insured notice of any reservation of rights.*" (Emphasis added.)

Under these authorities, the reservation of rights is obviously a *sine qua non* to avoiding a claim of estoppel or waiver.

In the instant case, INA informed Morse that it was assuming Morse's defense in August 1993; that information was passed on to Travelers, which closed its file on the Brewer claim. It is undisputed that INA assumed the defense for a year without any reservation of rights. INA belatedly determined (with no adequate explanation for its delay) that Brewer's injury was not covered under its policy and communicated this information to Travelers about two months before trial. INA requested that Travelers either assume Morse's defense at this point or participate in settlement negotiations while preserving the coverage dispute. Travelers rejected INA's suggestions. Travelers' position was that INA's action without a reservation of rights amounted to a waiver of its right to assert a nonliability defense. Travelers also invokes the doctrine of promissory estoppel, *i.e.*, Travelers was prejudiced by reliance on INA's actions, since it lost its right to control the litigation, pursue earlier or more favorable defense strategies or settlement terms, and was faced with having to defend a case at trial that it had no part in preparing. The case was set for trial on September 28, 1994. But it was not until September 21 that INA mailed to Travelers copies of INA's claims file, including copies of the complaint, all medical reports, wage-loss verifications, answers to interrogatories, deposition summaries, trial counsel's status reports, and settlement evaluations.

It is true, as INA points out, that the Ohio cases on which Travelers relies dealt with waiver and estoppel claims advanced by an insured against its insurer. *Socony–Vacuum Oil Co. v. Continental Cas. Co.*, (App. 1944), 45 Ohio Law Abs. 458, 67 N.E.2d 836; *Fid. & Cas. Co. of New York v. Blausey* (1934), 49 Ohio App. 556, 3 O.O. 408, 197 N.E. 385. In each instance, an insurer, after assuming the defense of the insured for a substantial period, declined to continue representa-

tion, thereby leaving the insured unprotected or at a disadvantage. Here, the dispute is between two insurance companies. The insured, Morse, was not left without a defense, nor forced to continue his own defense by hiring personal counsel.

In *Socony–Vacuum Oil Co. v. Continental Cas. Co.* (1944), 45 Ohio Law Abs. 458, 67 N.E.2d 836, the insurer provided a defense, without reserving its rights, for approximately one year before denying that it was liable under the policy and notified the insured that it should have its own attorney protect its interests. In a subsequent lawsuit, the insured filed suit against its carrier, requesting attorney fees for the counsel it hired to protect its interests. This court affirmed the trial court's award of attorney fees and stated:

"There remains to consider the question as to whether or not Continental, by its conduct in assuming and carrying on the Oil Company's defense against the claim of Harper for a period of one year without any reservation, did thereby waive the right to thereafter disclaim liability. It is the almost unanimous holding of the courts that have considered this question that where a liability insurer assumes the defense of a lawsuit brought against its assured, with full knowledge of the facts in the case which would bring the claim within an exception of the policy by which the insurer would be relieved of liability, the insurer must seasonably give notice to the assured that it disclaims liability. Failure to give such notice constitutes a waiver of the right to thereafter avoid liability provided for by such exception under the policy.

" * * *

"A party to litigation who parts with his right to conduct his defense to another, gives up a valuable right. So it is that where an insured surrenders to the insurer the right to conduct his defense in an action which he believes to be within the policy coverage and the insurer undertakes such defense and continues to act for a considerable period of time without giving notice of any reservation of rights, it is conclusively presumed that the insured has been prejudiced." *Id.*, 45 Ohio Law Abs. at 463–464, 67 N.E.2d at 838–839.

In affirming, the Supreme Court noted that breach of contract, rather than waiver or estoppel, is the proper mechanism to recover attorney fees. *Socony–Vacuum Oil Co. v. Continental Cas. Co.* (1945), 144 Ohio St. 382, 29 O.O. 563, 59 N.E.2d 199. However, in dictum, the Supreme Court stated that "waiver or estoppel could operate * * * in proceedings to compel insurer to pay a judgment recovered in a damage suit, which the insurer had defended without reservation or a notice of a claim of reservations." *Id.* at 392, 29 O.O. at 567, 59 N.E.2d at 203.

■ More recently, this court recognized the importance of the reservation of rights as an essential predicate to defeating a waiver or estoppel claim. See *Amerisure Ins. Co. v. Mut. Fire, Marine & Inland Ins. Co.* (May 9, 1991), Cuyahoga App. No. 58433, unreported, at 6, 1991 WL 76034:

"Next we turn to the fact that Mutual Fire did undertake the initial defense, and did so without a reservation of rights. In *Transamerica Insurance Company v. S.A.I. Marketing Corporation* (June 13, 1985), Cuyahoga App. No. 49256, unreported [1985 WL 6860], this court dealt with a different set of circumstances, but did state:

" 'Ordinarily, an insurer is estopped to deny its duty to defend only when (a) it undertakes the defense without advising the insured about its disclaimer of coverage, and (b) its withdrawal causes significant prejudice to the insured who reasonably relied on the insurer's apparent willingness to defend. See 14 Couch Cyclopedia of Insurance Law (Anderson ed. 1965), Sec. 51.80; *Transamerica Insurance Group v. Chubb & Son, Inc.* (Wash.App.1976) [16 Wash.App. 247], 554 P.2d 1080.' "

■ We find merit to Travelers' argument that INA's claim is precluded under the theory of promissory estoppel. It argues that since INA assumed Morse's defense upon the filing of the Brewer action, investigated the claim, and conducted discovery, it would be unfair and unreasonable now to allow INA to claim indemnification from Travelers. Promissory estoppel would apply as stated in *Talley v. Teamsters Local No. 377* (1976), 48 Ohio St.2d 142, 146, 2 O.O.3d 297, 299, 357 N.E.2d 44, 47, citing Restatement of Contracts 2d (1973), Section 90:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

The very reasons that motivate the requirement of a reservation of rights between the insured and its insurer apply with equal force to the circumstances of this case. As a matter of public policy, the obligation of a reservation of rights is a signal to others affected by the outcome of the litigation (in this case Morse *and* Travelers) that they no longer have to continue to concern themselves with the defense of the suit or liability to the claimant. They may sensibly assume that INA was fully protecting their interests. The conventions in the insurance industry are dependent upon such notices. If one is not given, as it was not here, both the insured and its other insurer are lulled into the belief that the other carrier, here INA, has assumed full responsibility for the matter. No further attention need be given to the claim nor reserves established for defense costs or indemnification. The same prejudice results to Travelers as results to Morse in

losing control of the litigation and opportunities for different defense strategies and settlement.

Appellate decisions in other jurisdictions are apparently split on whether the estoppel theory extends to relationships between insurers as compared with an insurer and its insured. Several cases hold that the same waiver and estoppel doctrines do not apply when the issue is only between insurance companies. See *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.* (C.A.5, 1996), 78 F.3d 202, 207; *Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.* (1990), 110 N.M. 741, 745, 799 P.2d 1113, 1117. However, we believe that our own Ohio precedents find support in other decisions that allow the defendant insurer to raise the estoppel defense. See *Transamerica Ins. Group v. Chubb & Son, Inc.* (1976), 16 Wash.App. 247, 250–252, 554 P.2d 1080, 1082–1083, where the court found that ten months without a reservation of rights was sufficient to establish prejudice, as follows:

"The course cannot be rerun, no amount of evidence will prove what might have occurred if a different route had been taken. By its own actions, Federal irrevocably fixed the course of events concerning the law suit for the first 10 months. Of necessity, this establishes prejudice.

" \* \* \*

"We believe there is a material question of fact as to the availability of the defense of estoppel to the other three insurance companies. There is no question of waiver because if there was no coverage, Federal had nothing to waive. As already pointed out, the reasons for the application of the doctrines of estoppel on behalf of the Gamel interests are that the assumption of the defenses prevented them from defending themselves, control of the defense is vital to the obligation to pay, and there is the possibility of a conflict of interest. These reasons may apply with equal effect to Transamerica, Reserve and Continental, depending upon the precise term of their policies and their relations with each other. The court must decide the question of the application of estoppel in the controversy between Federal and the other insurance companies after determining the facts."

The public policy behind requiring the insurer undertaking the defense to announce a reservation of rights is a sound one. It should not be eroded simply because the beneficiary of such a policy is another insurance company rather than the insured itself. We are reluctant to embrace a public policy that benefits and encourages those who do not expeditiously assert their rights, while at the same time inadvertently or recklessly misleading others who have relied thereon to their prejudice.

Travelers' Assignments of Error I and II are sustained.

Judgment reversed and judgment for defendant-appellant Travelers is entered.

*Judgment accordingly.*

HARPER, P.J., concurs.

PATTON, J., dissents.

PATTON, Judge, dissenting.

Although I agree with that part of the majority's opinion in which it finds that INA's coverage did not extend to the Brewer claim, I must dissent from its conclusion that the trial court erred by finding that Travelers should bear the cost of the Brewer settlement. Respectfully, I believe that the majority's emphasis on INA's failure to reserve its rights comes at the expense of addressing the lack of any actual prejudice suffered by Travelers.

The majority candidly concedes that "INA's coverage did not extend to the Brewer claim." Despite making this point, the majority finds that INA was either the primary insurer (despite having concluded that INA did not have coverage) or was the secondary insurer but waived its right to seek contribution through the "other insurance" clause of the INA policy.

This finding results from the majority's incomplete quotation of the INA policy. Section 8, the "other insurance" provision of the INA policy, reads as follows:

"The insurance afforded by this Coverage Part is primary insurance and we will not seek contribution from any other insurance available to you *unless* the other insurance is provided by a 'contractor' other than the designated 'contractor' for the same operation and job location designated in the Declarations. Then we will share with that other insurance by the method described below. * * *" (Emphasis added.)

Since Brewer suffered his injury on property controlled by Morse, the majority must necessarily find that INA had no coverage. Despite this finding, it states that INA has primary coverage. The logical inconsistency with the majority's position is that it imposes liability for coverage where it has said that none exists.

Moreover, by selectively quoting Section 8 of the INA policy, the majority creates the false impression that INA agreed to primary coverage. Read in its entirety, Section 8 provides primary coverage unless the other insurance is provided by another contractor for the same operation and job location. The "other contractor" in Section 8 would be Morse and the "other insurance" would be the Travelers policy. Ironically, the Travelers policy contains a virtually identical "other insurance" provision that states that the Travelers policy is primary coverage. Since Brewer's accident indisputably occurred on property controlled by Morse, the majority errs by finding INA primarily liable.

I have no quarrel in principle with the majority's discussion relating to an insurer's need to reserve its rights, but I find the significance of the reservation-of-rights issue considerably diminished under the unusual facts of this case

because the majority fails to address the actual prejudice suffered by Travelers as a result of the Brewer settlement. When actual prejudice is considered, I believe the trial court did not abuse its discretion by concluding that the equities favor INA.

The majority creates a broad, *per se* rule that finds actual prejudice resulting from a failure to reserve rights. As authority for this new rule, the majority cites our decision in *Socony–Vacuum Oil Co. v. Continental Cas. Co.* (1944), 45 Ohio Law Abs. 458, 67 N.E.2d 836, affirmed on other grounds (1945), 144 Ohio St. 382, 29 O.O. 563, 59 N.E.2d 199, for the proposition that when an insurer takes over the defense of a matter without reserving its rights, the insured gives up the valuable right to conduct a defense, and the passage of a considerable amount of time between assuming the defense and disclaiming the defense will lead to the conclusive presumption that the insured has been prejudiced. 45 Ohio Law.Abs. at 464, 67 N.E.2d at 839.

*Socony–Vacuum* lacks precedential value for three reasons. First, any statement by this court regarding a conclusive presumption of prejudice in that case was obvious dicta. The court prefaced that part of the opinion with the qualification "[b]ut even if it could be contended in the instant case the prejudice to the insured is a necessary part of its case against Continental, the facts are sufficient to fulfill such requirement." *Id.* Clearly, any statement regarding prejudice was not necessary to the holding and therefore constituted dicta. Second, even Travelers concedes that the Ohio Supreme Court affirmed *Socony–Vacuum,* but did so on breach of contract grounds, not on principles of equitable estoppel. As the majority notes, the Supreme Court's statements relating to estoppel were also dictum, so they lack any precedential value. Third, even were this court's statements relating to *per se* prejudice not dicta, those statements were, in any event, necessarily limited by the Supreme Court's ruling on other grounds.

Subsequent authority also rejects the majority's *per se* rule finding prejudice from a failure to reserve rights. *Amerisure Ins. Co. v. Mut. Fire, Marine & Inland Ins. Co.* (May 9, 1991), Cuyahoga App. No. 58433, unreported, 1991 WL 76034, cited by the majority, actually contradicts its rule of *per se* prejudice because it requires the court to find actual prejudice. The portion quoted by the majority states:

"Ordinarily, an insurer is estopped to deny its duty to defend only when (a) it undertakes the defense without advising the insured about its disclaimer of coverage, *and (b) its withdrawal causes significant prejudice to the insured who reasonably relied on the insurer's apparent willingness to defend.*" (Emphasis added.) *Id.* at 6.

Likewise, the cited portions of *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.* (1994), 93 Ohio App.3d 292, 299, 638 N.E.2d 174, 179, show an exception to the rule that estoppel can be used when the insurer assumes a defense without reserving its rights "for such a period of time *as to prejudice* the insured." (Emphasis added.)

The factors a court should consider when determining actual prejudice from a failure to reserve rights are well stated in 7C Appleman, Insurance Law and Practice (1979) 313–319, Section 4693:

"Factors that may result in prejudice include the loss of a favorable settlement opportunity, inability to produce all testimony existing in support of a case, inability to produce favorable witnesses, loss of benefit of any defense in law or fact through reliance upon the insurer's promise to defend, or withdrawal so near the time of trial that the insured is hampered in the preparation of its defense." (Footnote omitted.)

Although INA could have made a more diligent inquiry before tendering defense of the Brewer suit to Travelers, that delay, standing alone, is insufficient under the facts of this case to show actual prejudice to Travelers.

The record does not show (nor does Travelers argue) that INA's delay in tendering the suit prevented it from preparing a defense of the Brewer case. In point of fact, the uncontradicted evidence shows that Travelers conducted a very thorough investigation of the Brewer claim nearly two years before Brewer filed suit. Immediately following Brewer's injury, a Travelers claims adjuster photographed the accident site, took a recorded statement, obtained meteorological data, and consulted OSHA regulations. The adjuster's report to Travelers concluded that "insured [Morse] is 80–85% negligent because insured should have created a nonslip/skid ramp—all the way down instead of only partially."

The lack of actual prejudice to Travelers is further shown by its inability to argue that INA settled with Brewer for an unreasonably high amount. Travelers does not make this argument, most likely because the evidence conclusively demonstrates the opposite. INA's settlement committee figured $127,000 would be a "walkaway" figure for settlement, and created a reserve of $133,000. Pretrial discovery indicated that the employee suffered about $40,000 in special damages. Under the circumstances, INA's $100,000 settlement appears very favorable.

INA invited Travelers to join with it to arrive at a reasonable settlement figure, but Travelers flatly refused to agree to "any reasonable settlement" because it was not "privy to the facts, damages or prior negotiations involved." Oddly, Travelers then told INA, "[I]t is in your company's best interest to settle

this matter. Your failure to settle, for a reasonable figure, may put you in a position of acting in 'bad faith' with the defendants you are presently defending."

Finally, I would recognize that the reservation-of-rights issue presented here is distinguishable from the typical case involving an unsophisticated policyholder. As an insurance company, Travelers presumably has the same level of sophistication as INA and does not need the type of protection the reservation-of-rights decision affords to less sophisticated policyholders.

It is important to distinguish the situation presented in this appeal from those cases where the courts seek to protect a policyholder. In those circumstances, some courts have criticized judicial attempts to discern the relative sophistication of parties to insurance contracts. See, e.g., United States Fid. & Guar. Co. v. Kammeyer (1994), 97 Ohio App.3d 101, 107, 646 N.E.2d 244, 248. I do not disagree with those criticisms in the abstract, but would suggest that insurance law has developed in large measure based upon the recognition that an insured lacks an equal bargaining position with the insurance company. In this case, the trial court made the specific finding that Travelers can bring its own resources to bear on a policy dispute and simply does not need the same kind of protection the law affords other less sophisticated parties. While I would not urge the courts to make this a consideration in every such case, ignoring Travelers' relatively equal bargaining position would omit consideration of a very relevant factor tending to show Travelers did not suffer any prejudice from INA's late refusal to defend.

The only prejudice Travelers can show on this record is that the trial court ordered it to pay an amount that everyone agrees Travelers would have to pay had INA reserved its rights in the first place. Instead of applying the intractable rule set forth by the majority, the trial judge gave due consideration to all relevant equitable factors when concluding that Travelers failed to suffer actual prejudice as a result of INA's late tender.

Importantly, the trial judge found, as a matter of equity, that Travelers should not be permitted to escape paying a settlement amount that it would have to pay had INA reserved its rights when it undertook defense of the Brewer suit. The majority's rigid application of the equitable maxim that equity will not aid a volunteer miscomprehends not only that equitable maxim, but the nature of equity itself.

Equity labels a person a volunteer if he undertakes a duty gratuitously, not from the necessity or in the discharge of a binding obligation. As the majority notes, INA was in a bad-faith predicament, having the obligation to assume the defense of the Brewer suit. It therefore fails to meet the classic definition of a volunteer.

Moreover, equitable maxims are not to be applied as rigid rules or defining principles—their value lies in flexible application as equity may so require. It is for that reason that equitable maxims cover the legal spectrum. In this case, the trial judge applied an adjunct of the equitable maxim that that "no application of an equitable rule will be made, that will operate inequitably." *Tone v. Columbus* (1883), 39 Ohio St. 281, 306. I would find that the trial judge did not abuse his discretion when exercising his equitable discretion under the circumstances and affirm.