**FOREMOST INSURANCE COMPANY, Appellant,**

**v.**

**MOTORISTS MUTUAL INSURANCE COMPANY et al., Appellees.**

[Cite as *Foremost Ins. Co. v. Motorists Mut. Ins. Co.*, 167 Ohio App.3d 198, 2006-Ohio-3022.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86829.

Decided June 15, 2006.

Roberts & Matejczyk Co., L.P.A., Glenna M. Roberts, and David M. Matejczyk, for appellant.

Davis & Young and Richard M. Garner, for appellees.

FRANK D. CELEBREZZE JR., Presiding Judge.

{¶ 1} Appellant, Foremost Insurance Company ("Foremost"), appeals the decision of the trial court, which denied its motion for summary judgment and granted summary judgment in favor of appellee, Motorists Mutual Insurance Company ("Motorists"). After a thorough review of the arguments and for the reasons set forth below, we reverse and remand.

{¶ 2} The present action arose from a motor vehicle accident that occurred on July 19, 2002. On that day, Robert Krueger was operating his motorcycle on State Route 245, allegedly acting within the course and scope of his employment with Krueger, Grealis & Associates, Inc. James Arrigo was also traveling on State Route 254 and negligently turned in front of Krueger's motorcycle, causing an accident.

{¶ 3} At the time of the accident, Arrigo was insured by Progressive Insurance Company for the minimum liability limit of $12,500. Krueger's motorcycle was insured with Foremost for $500,000 per accident. Because Krueger was allegedly within the scope of his employment at the time of the accident, he claimed coverage through his employer's business auto policy with Motorists. Motorists' policy provided uninsured/underinsured coverage up to $1 million per accident, per covered automobile.

{¶ 4} After the accident, Krueger and his wife filed claims against Progressive, Foremost, and Motorists. In August 2003, the Kruegers settled with Progressive and Foremost for a total of $500,000, with $12,500 coming from the Progressive policy and $487,500 from the Foremost policy. In July 2003, Krueger's employer filed suit against Motorists in the Cuyahoga County Common Pleas Court, seeking payment of insurance proceeds, and the parties settled for $200,000 in April 2004.

{¶ 5} On July 8, 2004, Foremost filed suit against Motorists in the Cuyahoga County Common Pleas Court, seeking a pro rata share of the $487,500 it had paid to Krueger. Both parties filed motions for summary judgment; however, the trial court denied Foremost's motion and granted summary judgment in favor of Motorists. Foremost now brings this appeal, asserting one assignment of error for our review.

{¶ 6} "The trial court erred in denying Foremost Insurance Company's motion for summary judgment and in granting Motorists Mutual Insurance Company's motion for summary judgment."

{¶ 7} Foremost argues that the trial court erred when it denied its motion for summary judgment and granted summary judgment in favor of Motorists. More specifically, Foremost asserts that the trial court relied on the Ohio Supreme Court's decision in *Farm Bur. Mut. Auto. Ins. Co. v. Buckeye Union Cas. Co.* (1946), 147 Ohio St. 79, 33 O.O. 259, 67 N.E.2d 906, in reaching the conclusion that Foremost acted as a volunteer in making its payment to Krueger and does not have an equitable right to contribution against Motorists. Foremost contends that it did not act as a volunteer within the meaning of *Farm Bureau*, entitling it to equitable contribution from Motorists.

{¶ 8} To the contrary, Motorists argues that the trial court's decision to grant summary judgment in its favor should be affirmed. Motorists asserts that summary judgment was proper because, as the insurer for Krueger's employer, it was not obligated to extend coverage to Krueger. Motorists further contends that Krueger's motorcycle was excluded from coverage under the Motorists' insurance policy because it was not a covered auto, as defined by the policy. Motorists further argues that the trial court's ruling should be affirmed because Foremost is prohibited from seeking contribution. Motorists asserts that Fore-

most acted as a volunteer when it paid Krueger's claim and, pursuant to the Ohio Supreme Court's ruling in *Farm Bureau,* Foremost is not entitled to equitable contribution.

{¶ 9} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 10} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.

{¶ 11} In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under *Dresher,* "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim.*" (Emphasis sic.) Id. at 296, 662 N.E.2d 264. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293, 662 N.E.2d 264. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a genuine issue for trial exists. Id.

{¶ 12} This court reviews the lower court's granting of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140.

{¶ 13} Although the trial court determined that granting summary judgment in favor of Motorists was proper, we do not agree. Motorists claims that it was not obligated to provide coverage to the Kruegers; however, the language of

the Motorists' policy indicates otherwise. Motorists' policy specifically provides that in order to qualify as an insured for Ohio uninsured/underinsured motorist coverage, an individual is required to be an employee of the insured and must be occupying an auto owned by the insured or a temporary substitute for that auto at the time of the accident. The language of the policy states:

{¶ 14} "WHO IS AN INSURED

{¶ 15} "1. If the named insured is designated in the declaration as:

{¶ 16} " * * *

{¶ 17} "b. A partnership, limited liability company, corporation or any other form of organization, then the following are insureds:

{¶ 18} "(1) The named insured's employee * * * while occupying a covered 'auto' or a temporary substitute for a covered 'auto.' The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction."

{¶ 19} Motorists' policy with Krueger, Grealis & Associates lists a 2000 Ford F–150 pickup truck and a 1999 BMW as covered automobiles. The BMW listed under the Motorists' policy was owned by Krueger. On the day of the accident, Krueger attempted to drive the BMW, but discovered that it would not start because the car's battery was dead. Since the BMW was out of service, Krueger used his Harley Davidson motorcycle as a temporary substitute, as defined in the policy. It is clear from the language of the policy that Motorists' coverage extended to Krueger's motorcycle. Krueger's BMW was covered under the policy; however, due to mechanical problems, the vehicle would not operate, forcing Krueger to substitute his motorcycle for his BMW.

{¶ 20} The lower court's decision granting Krueger's employer summary judgment on this issue provides additional support. In *In re Krueger, Grealis & Assoc. v. Motorists Ins. Group*, Cuyahoga C.P. No. CV–03–504927, the court held:

{¶ 21} "Defendant Motorists Mutual Insurance Company's motion for summary judgment, filed on December 8, 2003, is denied. Plaintiffs' motion for summary judgment, filed on December 8, 2004 [sic], is granted. Accordingly, the Court makes the following findings and declarations. Plaintiff Robert Krueger was using his motorcycle as a temporary substitute for his 1999 BMW on the day of the accident. The BMW was a covered auto under the business policy issued by the Motorist Insurance Group. The motorcycle qualifies as a temporary substitute for the covered auto because the BMW's battery was dead. The policy provides coverage for a temporary substitute vehicle if the covered auto was out of service because of its breakdown, repair, servicing, loss or destruction. The BMW was broken down due to the dead battery. The other owned vehicle exclusion does not apply because the plaintiff was using his motorcycle as a

temporary substitute for the covered auto. Thus, the plaintiffs are entitled to coverage under the UM/UIM coverage of Motorists policy."[1]

{¶ 22} Motorists has attempted to avoid liability to Krueger by pointing to the language of its exclusion clause, which excludes coverage for "any vehicle owned by any insured which is not a covered auto." Motorists asserts that the exclusion clause makes no reference to substitute vehicles; thus, it excludes Krueger's motorcycle from coverage. Although Motorists places emphasis on the exclusion clause, it is important to look at the policy's definition of an insured. It clearly extends coverage to covered automobiles and temporary substitutes for covered automobiles. Krueger's motorcycle was a temporary substitute for his BMW within the meaning of the Motorists policy. Accordingly, Motorists was obligated to provide coverage to Krueger.

{¶ 23} Motorists is also incorrect in its contention that Foremost acted as a volunteer when it paid Krueger's claim and, as a result, it is not entitled to equitable contribution. Motorists supports its argument that Foremost acted as a volunteer with the Ohio Supreme Court's ruling in *Farm Bureau,* 147 Ohio St. 79, 33 O.O. 259, 67 N.E.2d 906. Although *Farm Bureau* does define "volunteer" in its holding, Foremost's actions do not fit within that definition. The court in *Farm Bureau* defined "volunteer" as "one [who] with knowledge of the facts and without legal liability, makes a payment of money * * *." Id. at paragraph six of the syllabus. Motorists argues that Foremost had knowledge of the facts and paid Krueger's claim although it had no legal liability to do so. In addition, Motorists asserts that Foremost made its payment to Krueger with the knowledge that Motorists had no intention of paying Krueger's claim. Motorists further contends that Foremost also paid the claim without giving any indication that it was preserving its right to pursue nonsettling or late-settling insurers.

{¶ 24} Foremost argues to the contrary that it had a legal obligation to pay Krueger's claim and did not knowingly pay a claim it was not liable for. Foremost asserts that its uninsured/underinsured policy issued to Krueger was a valid and enforceable contract, legally obligating it to pay the claim. Foremost argues that the only issue with respect to Krueger's claim was the amount it was responsible to pay, not whether it was liable.

{¶ 25} Foremost's insurance policy provides:

{¶ 26} "A. We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of a 'motorcycle' acci-

---

1. It is important to note that Motorists and the Kruegers entered into a settlement agreement with respect to this case. Accordingly, the trial court's grant of summary judgment on this particular issue has no res judicata effect.

dent. Damages include prejudgment interest awarded against the 'insured' * * *.

{¶ 27} "(B) 'Insured' as used in this part means:

{¶ 28} "1. You or any 'family member' for the ownership, maintenance or use of 'your covered motorcycle.'

{¶ 29} "2. Any person using 'your covered motorcycle.'

{¶ 30} "3. For 'your covered motorcycle,' any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this part."

{¶ 31} It is clear that the terms of the Foremost policy extend coverage to Krueger, making Foremost liable to him. Krueger's motorcycle was insured by Foremost, he sustained bodily injury when he was struck while riding the motorcycle, and, as the owner of the motorcycle, he fit within the definition of an insured. It is also clear that Foremost did not knowingly make a voluntary payment. Motorists informed Foremost that it had no intention of paying Krueger's claim. Believing that it was the only company legally liable to Krueger, Foremost paid his claim. Accordingly, since there was a legal obligation on behalf of Foremost to pay Krueger's claim, Foremost did not act as a volunteer when it compensated Krueger for his damages. The Ohio Supreme Court's holding in *Aetna Cas. & Sur. Co. v. Buckeye Union Cas. Co.* (1952), 157 Ohio St. 385, 392–393, 47 O.O. 270, 105 N.E.2d 568, provides additional support for Foremost's contention that it did not act as a volunteer. *Aetna* states:

{¶ 32} "Subrogation goes on the theory that the one invoking it has rightfully discharged the debt. It always requires something more than the mere payment of a debt in order to entitle the person paying the same to be substituted in the place of the original creditor. A mere volunteer or intermeddler who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation, or an assignment of the debt, pays the debt of another is not entitled to subrogation, the payment in his case absolutely extinguishing the debt. The payor must have acted on compulsion, and it is only in cases where the person paying the debt of another will be liable in the event of a default or compelled to pay in order to protect his own interests, or by virtue of legal process, that equity substitutes him in the place of the creditor without any agreement to that effect." Id., 157 Ohio St. at 393, 47 O.O. 270, 105 N.E.2d 568.

{¶ 33} It is clear that under its contract with Krueger, Foremost had a legal obligation to pay Krueger's claim and was not acting as a mere volunteer or intermeddler. Accordingly, there is no indication that Foremost acted as a volunteer within the meaning of *Farm Bureau* or *Aetna,* and the trial court erred in concluding so.

{¶ 34} The language of Foremost's policy further strengthens its argument that it is entitled to equitable contribution. The policy specifically provides:

{¶ 35} "OUR RIGHT TO RECOVER PAYMENT:

{¶ 36} "(A) if we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right."

{¶ 37} Foremost's policy specifically states that it has a right to contribution in this case. Krueger had a right to receive damages from Motorists, and, on the basis of that payment, Foremost is entitled to contribution.

{¶ 38} In addition, Foremost asserts the argument that this case is factually distinguishable from *Farm Bureau,* making the comparison on behalf of Motorists tenuous. Foremost argues that in *Farm Bureau,* both insurance companies admitted their coverage and liability for damages, unlike this action where Motorists continues to deny its obligation. Foremost also argues that *Farm Bureau* did not involve subrogation, and both of the insurers in *Farm Bureau* engaged in extensive settlement negotiations, unlike the present case. Although Foremost shuns the comparison, *Farm Bureau* provides authority supporting the conclusion that Foremost did not act as a volunteer within its meaning; thus, it is not barred from obtaining equitable contribution from Motorists.

{¶ 39} In asserting its motion for summary judgment, Motorists bore the burden of showing that there was no genuine issue of material fact to present at trial. It is clear from the record, as well as from our analysis above, that the burden was not properly satisfied. Motorists' arguments that it was not liable to Krueger for damages, as well as its assertion that Foremost acted as a volunteer and therefore could not assert a claim for contribution, are without merit.

{¶ 40} The trial court erred when it granted Motorists' motion for summary judgment and in turn denied Foremost's motion. Accordingly, we find merit to Foremost's appeal, and we reverse the judgment and remand this cause to the lower court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BLACKMON, J., concurs.

McMONAGLE, J., concurs in judgment only.