Weygandt, C. J.
 

 A preliminary procedural question is interposed by the defendant in the form of a motion to dismiss the plaintiff’s appeal on the ground that the decree of the Court of Appeals in the instant case is in fact not in conflict with the judgment of the Court of Appeals of Cuyahoga county in the
 
 Knutsen case, supra.
 

 Section 6 of Article IV of the Constitution of Ohio provides that “whenever the judges of a Court of Appeals find that a judgment upon which they have agreed is in conflict with a judgment.pronounced upon the same question by any other Court of Appeals of the state, the judges shall cértify the record of the case to the Supreme Court for review and final determination.” This provision confers plenary authority
 
 *86
 
 on the judges of a Court of Appeals to determine the existence of such a conflict, and an affirmative finding and certification with reference thereto vests this court with, jurisdiction to review the judgment in the case. Furthermore, this court is without authority to review that court’s affirmative finding of the existence of a conflict. However, if the finding of the judges of a Court of Appeals is in the negative, this court nevertheless may give incidental consideration to the question of a conflict in subsequently exercising its constitutional authority to determine whether the case is of public or great general interest.
 
 State, ex rel. Sylvania Home Telephone Co.,
 
 v.
 
 Richards et al., Judges,
 
 94 Ohio St., 287, 114 N. E., 263;
 
 Flury
 
 v.
 
 Central Publishing House of Reformed Church,
 
 118 Ohio St., 154, 160 N. E., 679;
 
 Whipp
 
 v.
 
 Industrial Commission,
 
 136 Ohio St., 531, 27 N. E. (2d), 141.
 

 In the instant ease the judges of the Court of Appeals of Geauga county found that their decree is in conflict with the judgment of the Court of Appeals of Cuyahoga county upon the same question. That affirmative finding is. final and will not be questioned by this court. Hence, the defendant’s motion to dismiss the plaintiff’s appeal must be overruled and the court must accept jurisdiction of the case.
 

 In the lower courts the defendant contended that the effective date of its policy was April 28, 1941, instead of April 25, 1941. The collision occurred about midnight on April 26, 1941. Thereafter the defendant and its insured entered into an agreement whereby it attempted to evade liability by changing the date of its policy to April 28, 1941 — the second day after the collision. The defendant insisted that its policy was executed and delivered under the mistaken belief on the part of both the‘insured and itself that the plaintiff company’s policy expired April 25, 1941, instead of April 28, 1941. The defendant offered no parol ev
 
 *87
 
 idence and but two exhibits consisting of letters written respectively by its agent and by a member of its underwriting department. Each of the lower courts very properly held that the defendant’s policy was not executed or delivered by mistake. Said the Court of Appeals: “This is clearly shown by the fact that such policy was delivered after full knowledge by defendant’s representative that the Farm Bureau policy did not expire until April 28, 1941.” Hence, on the date of the collision the two companies manifestly were co-insurers.
 

 With reference to the contention of the plaintiff that in equity and good conscience the defendant should be compelled to pay its proportionate share of the money paid by the plaintiff in full settlement of the, claims arising out of the collision, the ‘Court of Appeals stated that it could “readily understand the reasons for such insistence and would be moved to concur in the judgment and decree of the Common Pleas Court were it not for certain well established principles governing the right to contribution between insurers.” The court then observed that these principles are stated as follows in 29 American Jurisprudence, 998, Section 1333:
 

 “If several insurers bind themselves to pay the entire loss in case of the destruction of the subject of the insurance, and one insurer pays the whole loss, the one so paying has a right of action against his co-insurers for a ratable proportion of the amount paid by him, because he has paid a debt which is equally and concurrently due by the other insurers. But if each of several insurers contracts to pay such proportion of the loss to result from the destruction of the insured premises as the amount insured by such insurer bears to the whole insurance effected on the property, none of them has any right to contribution from the other, nor will the payment of the whole loss
 
 *88
 
 by any of them discharge the liability of the others, for in such a case the contracts are independent of each other; nor will the payment by one insurer of more than his share of a loss, and his assignment of his right to contribution, create any cause of action in favor of his assignee.”
 

 Similar statements appear in 6 Ruling Case Law, 1048, Section 10; 46 Corpus Juris Secundum, 150, Section 1207; 9 Ohio Jurisprudence, 669, Section 4
 
 et seq.
 
 And in the first paragraph of the syllabus in the case of
 
 Assets Realization Co.
 
 v.
 
 American Bonding Co.,
 
 88 Ohio St., 216, 102 N. E., 719, Ann. Cas. 1915A, 1194, this court restated and approved these principles as follows:
 

 “Where several surety companies are bound by separate instruments on account of the same principal, and each company, by its bond, limits its liability, in the event of default on the part of the principal, to such proportion of the total loss sustained by the obligee as the penalty named in its bond bears to the total amount of the bonds furnished by the principal to the obligee, the suretyship of each company is a separate and distinct transaction and the relation' of co-suretyship among them does not arise, nor does the right of contribution exist.”
 

 These pronouncements are based upon the fundamental doctrine that contribution rests upon principles of equity and natural justice; that one who, with knowledge of the facts and without legal liability, makes a payment of money, thereby becomes a volunteer; and that equity will not aid a volunteer.
 
 Russell
 
 v.
 
 Failor,
 
 1 Ohio St., 327, 59 Am. Dec., 631;
 
 Davis
 
 v.
 
 Bauer,
 
 41 Ohio St., 257;
 
 Baltimore & Ohio Rd. Co.
 
 v.
 
 Walker,
 
 45 Ohio St., 577, 16 N. E., 475; 9 Ohio Jurisprudence, 689, Section 17; 16 Ohio Jurisprudence, 142, Section 56; 6 Ruling Case Law, 1037, 1039; 21 Ruling Case Law, 141, Section 165; 18 Corpus Juris
 
 *89
 
 Secundum, 8, Section 4; 46 Corpus Juris Secundum, 152.
 

 .Was the plaintiff a volunteer?
 

 Admittedly each of the two policies here involved contains the following unambiguous provision:
 

 “Other Insurance. If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss.”
 

 Under these provisions neither the plaintiff nor the defendant was liable for the entire amount of the loss. Each was liable for its proportion but no more. In his opinion in the case of the
 
 Assets Realization Co.
 
 v.
 
 American Bonding Co., supra,
 
 Judge Newman used the following pertinent and decisive language:
 

 “The several bonding companies were not obligated to pay the same debt — they each agreed to pay an aliquot part' — a fractional part of the total loss due to the default of the depositary. If one of these companies failed to pay its portion, such failure, in no way, affected the liability of the other companies. No duty, legal or equitable, was owing by one company to the other. ’ ’
 

 In the instant case the plaintiff contends that the settlement was negotiated with the knowledge of the defendant’s representatives who promised that the defendant would pay its proportion of the loss, as it was required to do under the terms of its policy. However, it is admitted that subsequently the plaintiff was notified that the defendant refused to pay its proportion of the loss. It is admitted, too, that in spite of this notice the plaintiff thereafter proceeded to pay the entire loss — a thing which by the terms of its own policy it was not obligated to do. Thus, with knowl
 
 *90
 
 edge of the facts and without legal liability therefor the plaintiff included in its payment the proportion for which the defendant alone was liable. Under these circumstances the plaintiff manifestly became a volunteer and hence is not entitled to contribution. The plaintiff stresses the fact of the defendant’s liability for the latter’s proportion of the loss. This, of course, is important. But of controlling importance, so far as the two insurance companies alone are concerned, is the fact that the
 
 plaintiff
 
 was
 
 not
 
 liable for the defendant’s proportion of the loss. It must be remembered that this is not a case in which each insurer is liable for the entire loss; rather it is one in which the liability of each insurer is expressly limited to its proportion of the loss.
 

 Under the undisputed facts the decree of the Court of Appeals was not erroneous and must be affirmed.
 

 Decree affirmed.
 

 Bell, Matthias and Hast, JJ., concur.