# ROYAL INDEMNITY CO. v. EAGLE STAR INSURANCE CO., Ltd., et al.

No. 62-C-6673.

Circuit Court, Dade County.

July 16, 1963.

Wicker, Smith, Blomqvist & Hinckley, Miami, for plaintiff.

Fowler, White, Gillen, Humkey & Trenam, Miami, for defendant Eagle Star Insurance Co., Ltd.

Simon, Hays & Grundwerg, Miami, for defendant Alexander C. Moskovits.

Samuel Z. Goldman, Green & Hastings, Miami, for defendants Sadie Friedfeld and Harry Friedfeld.

HAL P. DEKLE, Circuit Judge.

*Opinion and final decree:* This is an action for declaratory relief brought by Royal Indemnity Company ("Royal" hereafter) for a determination of its liability under its policy of insurance to its insured, Alexander C. Moskovits, and its contingent liability, if any, unto Eagle Star Insurance Company, Ltd. ("Eagle Star" hereafter), and Sadie Friedfeld and Harry Friedfeld.

The facts demonstrate that Moskovits, on June 3, 1960, at the time Sadie Friedfeld was injured because of the alleged negligence of Moskovits, had two personal comprehensive insurance policies in effect covering the same risk. Royal's policy, effective June 3, 1958 to June 3, 1961, provided coverage for bodily injury in the sum of $25,000 for each occurrence. Eagle Star's policy, effective January 4, 1960 to January 4, 1963, provided the same coverage for bodily injury in the sum of $100,000 for each occurrence.

Both policies of insurance contained "pro rata clauses" providing that each insurer should not be liable for any greater proportion of any loss which might occur than the amount named in the policy bears to the entire amount of all valid and collectible insurance. Both policies contain practically identical provisions—"If the insured has other insurance against a loss covered by this coverage, this company shall not be liable under this coverage for a greater portion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

These clauses are known as "pro rata" clauses. If there was no other circumstance, it is clear both from the plain wording

of the clause in each policy, and from the decisions relative thereto, that each company would be liable only for its "pro rata" share of any judgment recovered against its insured, i.e., Royal would be liable for $25,000 over $125,000, or 20 percent, and Eagle Star would be liable for $100,000 over $125,000, or 80 percent, of such judgment, each liable up to its policy limits. American Lumber Mutual Casualty Co. v. Lumber Mutual Casualty Insurance Co. (1937), 251 App. Div. 231, 295 N.Y.S. 321.

This case presents "other circumstances" that cloud the clear and plain wording of the normal pro rata clause and from which the plaintiff has properly asked for a declaration of its rights. Royal's pro rata liability has been complicated by the fact that Eagle Star denied liability unto its insured because Moskovits allegedly did not report the Friedfeld loss to the company as soon as practicable as provided for by its policy of insurance. The question for determination by the court is whether or not Royal would be liable for 20 percent of any judgment rendered against its insured, Moskovits, if Eagle Star is successful in escaping liability for its 80 percent share because of a policy violation. Royal argues that at the time of the loss (June 3, 1960), the insured had other valid and collectible insurance in existence and that its pro rata share of liability became fixed as of the date of the loss. On the other hand, the insured, Moskovits, and the injured, Friedfeld, argue that Royal should now be responsible for 100 percent of the loss up to its policy limits on the theory that if Eagle Star is successful in denying coverage to Moskovits, the insured does not have other valid and collectible insurance and the pro rata clause of Royal is not applicable. The court holds that Royal's contentions are correct.

"Valid and collectible" insurance does not mean not available for payment.

"Where there are several insurance policies which insure the same party, upon the same subject matter, and assume the same risk, this constitutes double insurance. But where an insurer was entitled to apportion a loss with other valid and collectible insurance, it intended to exclude illegal or invalid insurance, such as that which was voidable for misrepresentation, and also uncollectible insurance, such as that written by an insolvent company." Appleman, Insurance Law & Practice, vol. 8, §4911, pp. 378, 379.

In liability policies, prorating clauses generally make the liability insurers several and not joint and determinable as soon as the liability of the insured to a third party becomes fixed. Richards on Insurance, 1962 Supp., p. 5, §176.

In American Lumber Mutual Casualty Co. v. Lumber Mutual Casualty Insurance Co., supra, the court stated at page 324— "We interpret the words 'total amount of collectible and valid insurance' to mean insurance which is capable of protecting the insured. It merely excludes invalid or illegal insurance (such as insurance which is voidable for misrepresentation) and uncollectible insurance (such as insurance of an insolvent company) from the computation of total insurance for the purpose of apportionment."

See also Air Transport Mfg. Co. v. Employer's Liab. Assur. Corp., 1949, 204 Pac. 2d 647 (Calif.), for a like definition of "valid and collectible."

Failure of an insured to give notice of an accident to his insurance carrier could, if determined to be prejudicial, constitute a breach of a condition of the policy and give the insurer a right to deny coverage. State Farm Mutual Automobile Insurance Co. v. Ranson, Fla. DCA2, 121 So.2d 175. However, a breach of this condition does not ipso facto void the policy of insurance, but makes the policy voidable at the insurer's option and upon a factual determination. Hence, at the time the loss occurred, both companies had valid insurance policies, covering the same risk, the same insured, and were both liable on their respective contracts on a pro rata basis. The pivotal question to be answered is whether the insurance carrier's liability attaches at the time of the loss or at a time subsequent to the loss. Can the insured, by his own dereliction after the loss occurs, change one of his insurer's liability from that of a co-insurer sharing the loss pro rata to that of a sole carrier paying the entire loss up to its limits?

There appears to be no direct authority on the exact question. For a case with a similar set of facts and with the same result reached by this court, see Air Transport Mfg. Co. v. Employers Liab. Assur. Corp., supra. However, the authorities uniformly hold that insurance contracts with pro rata clauses create a liability that is several and not joint and that the insured cannot recover more than the pro rata amount stipulated therein from one carrier. 21 A.L.R. 2d 611; Richards on Insurance, 1962 Supp. p. 5, §176. In cases of duplicate insurance, neither insurance carrier would have the right of contribution if it paid more than its proportionate amount of the loss. Globe National Fire Ins. Co. v. American Bonding and Casualty Co., Iowa, 217 N.W. 268; Fireman's Fund Ind. Co. v. Shelby Mutual Cas. Co., Ohio, 117 N.E. 2d 477; Buckeye Union Cas. Co. v. Ransilo, 135 Fed. 2d 921 (C.C.A. 6th), cert. denied 320 U.S. 745; Farm Bureau Mutual Auto Ins. Co. v. Buckeye Union Cas. Co., Ohio, 67 N.E. 2d 906.

It is apparent that under pro rata clauses, each insurer is liable for its proportionate share and is never liable for the entire loss.

The defendants, Moskovits and the Friedfelds, argue that Royal's liability became fixed at 20 percent when the loss occurred, but then shifts to 100 percent when the co-insurer is successful in denying coverage. This argument cannot prevail. Under pro rata clauses, one carrier is liable for its proportionate loss. This liability is several. Surely a co-insurer's liability cannot be increased beyond its pro rata share by acts over which it has no control. If the insured has the power to alter a co-insurer's liability by his own dereliction, the door would be open for collusion between one carrier and the insured. Or the insured, for personal reasons, could select the carrier which he desires to bear the loss. To permit this would be inequitable.

In dealing with the question of coverage under a non owned automobile policy, the First District Court of Appeal in Liberty Mutual Insurance Co. v. Conley, Fla., 152 So.2d 521, held that the carrier's liability attached at the time of the loss and nothing that the named insured did subsequent to the loss could alter the carrier's liability. There the insured, a minor, purchased a non owned automobile policy but subsequent thereto he purchased a motor vehicle and had an accident. The carrier denied policy coverage because an owned automobile was not covered by the policy. The insured then disaffirmed the purchase of the automobile and demanded coverage since his disaffirmance of the automobile purchase was ab initio. The court, in holding that the insured company did not cover this insured's owned automobile, said—

"Conley in his contract of insurance agreed that such insurance would not apply to any automobile owned by him. He bought and paid for an automobile. Within a short period of time he had an accident with the owned automobile. To hold that a subsequent disaffirmance of the contract purchasing the automobile would have a retroactive result as a bona fide contract with a third party [the insurance company] would constitute an incongruous result."

The rationale of Conley must be applied to the case at bar. Royal's liability became fixed when Friedfeld was injured and nothing its insured did subsequent to this date could alter its liability.

It is accordingly ordered, adjudged and decreed —

(1)   That Royal Indemnity Company is liable for 20 percent of any money damages and costs up to its policy limit of $25,000 recovered by Sadie Friedfeld and Harry Friedfeld in their suit

against Alexander C. Moskovits now pending in this court, being case no. 61-L-3828.

(2) That Eagle Star Insurance Co., Ltd. is liable for 80 percent of any money damages and costs up to its policy limit of $100,000 recovered by Sadie Friedfeld and Harry Friedfeld in their suit against Alexander C. Moskovits now pending in this court, being case no. 61-L-3828. If Eagle Star Insurance Company, Ltd. is not liable to Moskovits because of breach of the notice condition in the policy, then Moskovits is personally liable for 80 percent of any money damages and costs recovered by Sadie Friedfeld and Harry Friedfeld in their suit against Moskovits now pending in this court, being case no. 61-L-3828.

(3) That the defendants, Sadie Friedfeld and Harry Friedfeld, are hereby permanently restrained from instituting any action against Royal Indemnity Company for the recovery of more than 20 percent of any judgment rendered in their favor against Moskovits up to the limits of the plaintiff's coverage, to-wit, $25,000.

(4) That the plaintiff have and recover its costs in the prosecution of this action.