Plaintiff-appellant Corneliu Mihalca ("Corneliu") appeals a judgment of the Summit County Court of Common Pleas granting partial summary judgment in favor of defendant-appellee George Malita ("George"). This Court affirms in part and reverses in part.
In 1978, both George and Corneliu immigrated to the United States from Romania, where they had known each other for some time. By 1983, both were living in Akron, Ohio. At that time, Corneliu began a painting company and hired George as one of his workers. George ran his work for Corneliu's company through his own company, d.b.a. GM Enterprises, and usually acted as both an employee of and a subcontractor for Corneliu's company.
In 1987, George left Ohio for Florida, where he again worked as a painter. In 1989, he entered a partnership with another man that sold and installed tile and flooring. By 1990, George left the tile and flooring business in Florida and returned to Ohio.
Upon his return to Ohio, George asked Corneliu for a job as a painter with Corneliu's new company, Phoenix Technology. Corneliu agreed to bring George back, and they resumed their previous relationship, with GM Enterprises as a subcontractor and George as an employee.
In 1994, George and Corneliu discussed starting a tile and flooring business. The parties differ as to what their relationship would be in the new business. George contended that he wanted to own fifty percent of the company, that they should start a new business not associated with Corneliu's other companies, that both parties agreed that the new company would be a retail operation, and that he would be an employee of the company. Corneliu contended that George insisted that the business be a retail operation instead of operating by bidding on jobs, that he and George would operate like partners, with each sharing fifty percent of the profits, and that George said that he would run the day-to-day operations of the company while Corneliu would put money into the business. The company that emerged from the discussions between George and Corneliu was the Phoenix Tile and Marble Company ("Phoenix Tile"), which Corneliu had incorporated in 1994.
Phoenix Tile entered into a lease agreement for space for a retail store on May 8, 1995. The lease was signed by Corneliu, as president of Phoenix Tile, and George, who was listed as a vice-president of Phoenix Tile. Corneliu and George were also required to become co-guarantors of the lease and signed a guaranty in their individual capacities.
The parties' working relationship quickly deteriorated. Corneliu alleged that George was not showing up at the store regularly, that George was having customers pay with checks made out to George personally, and that all of the money that Corneliu was putting into the corporation was being wasted. George countered that he was not being paid and that Corneliu had instructed him to pay employees in cash to avoid taxes. George left Phoenix Tile for a brief period but later returned. In the end, George told Corneliu that he was finished in the business. Soon thereafter, Phoenix Tile ceased operations; Corneliu continued to pay rent on the space until the landlord accepted a surrender of the premises.
On June 6, 1996, Corneliu filed a complaint in the Summit County Court of Common Pleas, naming George as the sole defendant. Count I of the complaint alleged that George owed Corneliu one-half of all capital contributions Corneliu made to Phoenix Tile and that George was liable to Corneliu for one-half of the rent payments made on the retail space. Count II sought reimbursement of a loan made to George. The complaint was later amended to add three more counts: Count III alleged that George breached his fiduciary duty toward Corneliu and Phoenix Tile, Count IV alleged that George converted corporate funds, and Count V alleged a cause of action for fraud.
George answered and counterclaimed against Corneliu for unpaid wages. George also brought Phoenix Tile in as a third-party defendant.
On February 26, 1998, George moved for summary judgment on Count I. Corneliu responded in opposition and cross-moved for summary judgment on Count I. The trial court granted George's motion and denied Corneliu's motion on June 17, 1998.
George moved for summary judgment on Counts III, IV, and V on August 21, 1998. Corneliu responded in opposition. The trial court granted George's motion on November 19, 1998. Subsequently, the parties dismissed the remaining claims and counterclaims, and the trial court found that, with respect to its two prior orders, there was no just reason for delay.
Corneliu timely appeals, asserting four assignments of error.
 Assignment of Error No. I THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT ON COUNT I OF THE COMPLAINT.
 In his first assignment of error, Corneliu argues that the trial court should not have granted summary judgment in favor of George on Count I of the complaint. Corneliu argues that the trial court should have granted summary judgment in his favor as to whether George was liable to him for one-half of the money that he (Corneliu) invested in Phoenix Tile and as to whether George was liable for one-half of the payments made on Phoenix Tile's lease. This Court disagrees.
"In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court." McConville v. Jackson Comfort Sys., Inc. (1994),95 Ohio App.3d 297, 301. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Based on the pleadings, evidence, and stipulations offered, when viewed in a light most favorable to the nonmoving party, reasonable minds must only be able to reach a conclusion that is adverse to the nonmoving party. Id. It is the moving party's initial burden to identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 293, limiting Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, paragraph three of the syllabus. Once this initial burden is met, the nonmoving party may not rest on its pleadings, but must set forth specific facts showing a genuine issue of material fact. Dresher, 75 Ohio St.3d at 293; Civ.R. 56(E).
 A. Liability for Money Put into the Corporation
Corneliu presents two arguments in support of the issue of George's liability for one-half of the money that Corneliu put into Phoenix Tile. First, he argues that Phoenix Tile was a partnership, not a corporation, because a partnership was intended and because several corporate formalities were ignored or disregarded. Second, he argues that, even assuming Phoenix Tile was a corporation, the trial court should have permitted him to pierce the corporate veil to hold George liable for one-half of the corporate debt.
Corneliu's partnership argument is not well taken. The evidence before the trial court showed that while he referred to Phoenix Tile as a partnership and to George as a partner, Corneliu clearly created and dealt with Phoenix Tile as a corporation. Corneliu was a shareholder, the president, and the secretary/treasurer of Phoenix Tile. "If an organization has held itself out as a corporation, its members and officers are estopped from denying its corporate status." Thomas v. Price (May 14, 1999), Hamilton App. No. C-980543, unreported, citing Callender v.Painesville H.R. Co. (1860), 11 Ohio St. 516, 526. Because he treated Phoenix Tile as a corporation and because he was an officer of the corporation, Corneliu cannot now claim that Phoenix Tile was a partnership.
Corneliu's arguments for holding George personally liable for one-half of the money paid into Phoenix Tile are also not persuasive. Corneliu claims that there was an oral promise that George would repay Corneliu. However, the evidence before the trial court at the time that the parties moved for summary judgment on Count I shows that Corneliu treated all the money that he paid into Phoenix Tile as loans. As such, the indebtedness for the loans belonged to the corporation.
Corneliu also argues that the doctrine of piercing the corporate veil should be applied to hold George liable. However, Corneliu cites no authority for the proposition of allowing one shareholder in a corporation to pierce the corporate veil to impose liability on another shareholder. The doctrine is one created to protect a corporation's creditors. BelvedereCondominium Unit Owners' Assn. v. R.E. Roark Cos., Inc. (1993),67 Ohio St.3d 274, 287.
Even if Corneliu were to be treated as a creditor of Phoenix Tile (by having loaned money to the corporation), George would still be entitled to summary judgment on this issue. The Ohio Supreme Court stated the requirements for piercing the corporate veil in Belvedere:
 The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.
 Id. at paragraph three of the syllabus. Viewing the evidence in a light most favorable to Corneliu, this Court concludes that there is no evidence that George had such control over Phoenix Tile that the corporation had no separate mind, will, or existence. While George ran day-to-day operations of the corporation, Corneliu was a fifty percent shareholder. George consulted with Corneliu on various matters; when he disagreed with George, Corneliu often acquiesced to George's viewpoint to preserve harmony between them. Nothing prevented Corneliu from taking a more active role in Phoenix Tile. Because there was no evidence supporting the first requirement for piercing the corporate veil, the trial court did not err by granting summary judgment to George on this issue.
 B. Liability for Rent Payments
Corneliu also contends that George is liable to him for one-half of the rent that was paid on Phoenix Tile's retail store after the store ceased to do business. Corneliu argues that because George is a co-guarantor of the lease he is responsible for half of the rent payments.
Both parties agree that the guaranty at issue in this case is an absolute guaranty.[1] Corneliu correctly notes that a creditor need not proceed against a principal debtor before pursuing a guarantor who has given an absolute guaranty; however, the guarantor is only liable on the absolute guaranty upon the default of the primary debtor. Eden Realty Co. v. Weather-Seal,Inc. (1957), 102 Ohio App. 219, 222. In the case at bar, there is no evidence that Phoenix Tile, the primary debtor on the lease, has defaulted. Therefore, neither Corneliu nor George was liable to the landlord as guarantors.
While co-guarantors might otherwise seek contribution for any liability incurred, such is not the case where the guarantors are not yet liable. "One who, with knowledge of the facts and without legal liability, makes a payment of money, thereby becomes a volunteer." Farm Bur. Mut. Auto. Ins. Co. v. Buckeye Union Cas.Co. (1946), 147 Ohio St. 79, paragraph six of the syllabus. "Equity will not aid a volunteer." Id. at paragraph seven of the syllabus. Corneliu made the rent payments voluntarily. Therefore, he is not entitled to contribution from George for those payments.
Viewing the evidence before the trial court in a light most favorable to Corneliu, George was entitled to summary judgment on Count I. Accordingly, the first assignment of error is overruled.
 Assignment of Error No. II THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT DEFENDANT HAD NO FIDUCIARY DUTY TO PLAINTIFF.
 Corneliu argues in his second assignment of error that the trial court erred by granting summary judgment on Count III. He argues that George was not entitled to judgment as a matter of law on the question of whether George breached his fiduciary duty toward Corneliu and Phoenix Tile. This Court agrees.
In his motion for summary judgment, George presented two arguments. First, he asserted that he did not have a fiduciary duty toward Phoenix Tile because he was an employee of the corporation, not a shareholder or an officer. George presented evidence in the form of documents and Corneliu's deposition that, according to George, showed that he was not an officer or a shareholder of the corporation. However, there was evidence that George was an officer of the corporation, because he was listed as the vice-president of Phoenix Tile on the lease for the retail store. Also, there was testimony from Corneliu's deposition that, if believed, would demonstrate that George was in fact a shareholder of the corporation. Viewing the evidence in a light most favorable to Corneliu, there was a genuine issue of material fact as to whether George owed a fiduciary duty to Phoenix Tile.[2]
George's second argument was that Corneliu had not presented evidence to show that he (George) had breached a fiduciary duty. However, George failed to present any evidence to support this argument. As noted above, George, as the party moving for summary judgment, had the burden of "identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of [Corneliu's] claims."Dresher, 75 Ohio St.3d at 293. George did not point to any evidence but rather stated that Corneliu had not presented evidence of a breach. As such, George failed to meet his burden under Dresher, precluding a grant of summary judgment in his favor. See id.
The trial court erred by granting summary judgment in favor of George on Count III. The second assignment of error is sustained.
 Assignment of Error No. III THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT ON PLAINTIFF'S CLAIM OF CONVERSION.
 Corneliu contends in his third assignment of error that the trial court erroneously granted summary judgment as to Count IV, which alleged conversion. This Court agrees.
George did not point to any evidence in the record in support of this portion of his motion for summary judgment. Instead, he stated that Corneliu could not prove a claim for conversion. George did not meet the burden imposed by Dresher. Accordingly, the trial court erred by granting summary judgment in favor of George on Count IV. The third assignment of error is sustained.
 Assignment of Error No. IV THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT ON PLAINTIFF'S FRAUD CLAIM.
 In his fourth and final assignment of error, Corneliu argues that the trial court should not have granted summary judgment on Count V, which alleged fraud. This Court agrees.
George presented two arguments in his motion for summary judgment on the fraud claim. He first argued that Corneliu's complaint did not comply with Civ.R. 9(B), which requires allegations of fraud to be plead with specificity. Such an argument was untimely. "The complaint's failure to plead fraud with particularity is deemed waived if it is not raised in the first responsive pleading or an early motion." Hoover v. Wherry
(May 25, 1999), Franklin App. No. 98AP-890, unreported. See, also, 2A Moore, Federal Practice (2 Ed. 1992), Paragraph 9.03[5], at 9-60 to 9-61. George was not entitled to summary judgment on the basis of a defect in Corneliu's complaint under Civ.R. 9(B).
George's second argument was that Corneliu could not present evidence to support his claim for fraud. As was the case with the second and third assignments of error, George did not meet his burden under Dresher to point to evidence in the record in support of his motion for summary judgment. Therefore, George was not entitled to summary judgment on Count V on that basis. The fourth assignment of error is sustained.
The first assignment of error is overruled. The second, third, and fourth assignments of error are sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and causeremanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
 _____________________________________ DONNA J. CARR FOR THE COURT.
WHITMORE, J. CONCURS AND SLABY, P.J. CONCURS IN JUDGMENT ONLY
[1] Several portions of the guaranty were not completed, but neither party has argued that the guaranty was invalid. Therefore, this Court will not address that issue.
[2] Corneliu has also argued that George owed him a heightened fiduciary duty as a shareholder in a close corporation. However, there is no evidence that the parties ever entered into a close corporation agreement, one of the requirements imposed by R.C.1701.591(A) and (B) for a corporation to attain close corporation status. Because Phoenix Tile does not meet the statutory requirements for a close corporation, this argument is not well taken.