WESTFIELD NATIONAL INSURANCE COMPANY, Appellant,

v.

FARMERS INSURANCE EXCHANGE, Appellee.

[Cite as *Westfield Natl. Ins. Co. v. Farmers Ins. Exchange,*
169 Ohio App.3d 785, 2006-Ohio-6849.]

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5–06–12.

Decided Dec. 26, 2006.

David W. Doerner, for appellant.

Michael J., Manahan and Stephen E. House, for appellee.

ROGERS, Judge.

{¶ 1} Plaintiff-appellant, Westfield National Insurance Company ("Westfield"), appeals the judgment of the Hancock County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Farmers Insurance Exchange ("Farmers"). On appeal, Westfield argues that the trial court erred in determining that it was a volunteer and was therefore not entitled to contribution from Farmers in connection with the settlement of an underinsured motorist claim. Based on the following, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

{¶ 2} On March 30, 2000, Morgan Grose, the mother of one-year-old Isaac Grose, was operating a vehicle owned by Isaac's paternal grandfather, Kevin Grose. Morgan failed to yield at a stop sign and drove the vehicle onto a major highway, which was then struck by a larger and heavier vehicle, resulting in the death of both Morgan and Isaac. It is undisputed that the accident was caused by Morgan's negligence.

{¶ 3} On the date of the accident, Westfield had in effect a policy of insurance issued to Patrick and Diana Altvater, Isaac's maternal grandparents, with uninsured/underinsured motorist coverage ("the Westfield policy"). Also, Troy Grose, Isaac's father, Morgan, and Isaac lived with Patrick and Diana Altvater and were insureds under the Westfield policy for purposes of uninsured/underinsured motorist coverage.

{¶ 4} National General Assurance Company ("National General") insured the vehicle Morgan was operating. National General paid the full $25,000 limit under its liability coverage in the settlement of the wrongful-death claim asserted on behalf of Isaac against Morgan.

{¶ 5} On April 1, 2002, Patrick and Diana Altvater and Troy, individually and as the administrator of Isaac's estate, filed suit against Westfield seeking underinsured motorist coverage under the Westfield policy.

{¶ 6} On December 9, 2002, Troy was deposed and testified that he was self-employed as an auto mechanic, doing business as Confident Auto Ltd., and that he believed, at the time of the accident, American Family Insurance Company insured his business.

{¶ 7} On December 27, 2002, counsel for Isaac's estate and counsel for Westfield discussed a request for the insurance policy that covered Troy in connection with his business.

{¶ 8} In January 2003, counsel for Westfield requested, via letter, the insurance policy, and Westfield filed a request for the production of copies of all insurance policies issued to Troy that were in effect on March 30, 2000.

{¶ 9} On April 15, 2003, Westfield moved to compel Troy to produce the requested insurance policies, a motion that the trial court granted. On that same date, the parties proceeded to mediate the case in an attempt to avoid trial. The mediation proceeded with an agreement that it was intended to discharge all potential underinsured motorist claims, because Westfield knew that an additional unidentified insurance carrier could also be liable for the accident. At the time of the mediation, the unidentified insurance carrier was tentatively identified as one of the State Farm Insurance Groups; however, it was later determined that the unidentified insurance carrier was Farmers.

{¶ 10} On June 26, 2005, without any notice to Farmers, Westfield settled the entire claim for the sum of $225,000. Westfield prepared its written release and assignment agreement to include the release of Farmers, which the parties executed upon the Hancock County Probate Court's approval of the settlement. Additionally, in the settlement, Westfield received from Isaac's estate, Troy, and Patrick and Diana Altvater, a full and final release releasing Westfield, Farmers, and any other insurance company providing uninsured or underinsured motorist coverage from all underinsured motorist claims and all rights and interest to all claims against Farmers and any other insurance company providing uninsured or underinsured motorist coverage arising out of the March 30, 2000 accident and death of Isaac.

{¶ 11} On August 19, 2003, Westfield filed a complaint for declaratory judgment against Farmers, seeking contribution for Farmers' claimed proportionate share of the loss.

{¶ 12} In July 2004, Westfield and Farmers filed motions for summary judgment.

{¶ 13} On February 28, 2006, the trial court found that both insurance carriers had pro-rata coverage for the resolved underinsured motorist claim; however, the trial court further found that Westfield had acted as a volunteer in paying the entire claim. As a result, the trial court denied Westfield's motion for summary judgment and granted Farmers' motion for summary judgment.

{¶ 14} It is from this judgment Westfield appeals, presenting the following assignment of error for our review:

The trial court erred in its judgment on the motions for summary judgment, when it held that Westfield National Insurance Company was a volunteer and as a result was not entitled to contribution from farmers insurance exchange in connection with the settlement of an underinsured motorist claim.

{¶ 15} On appeal, Westfield argues that the trial court erred when it determined that Westfield was a volunteer and was therefore not entitled to contribution from Farmers in connection with the settlement of the underinsured motorist claim.

{¶ 16} An appellate court reviews a summary judgment order de novo. *Wampler v. Higgins* (2001), 93 Ohio St.3d 111, 127, 752 N.E.2d 962; *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175, 722 N.E.2d 108. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, 774 N.E.2d 775, at ¶ 25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Ed.* (1994), 69 Ohio St.3d 217, 222, 631 N.E.2d 150. Summary judgment is appropriate when (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to be one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynolds-burg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 17} The party moving for summary judgment has the initial burden of producing some evidence that affirmatively demonstrates the lack of a genuine issue of material fact. *State ex rel. Burnes v. Athens Cty. Clerk of Courts* (1998), 83 Ohio St.3d 523, 524, 700 N.E.2d 1260; see, also, *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.

{¶ 18} Both the Westfield policy and Farmers' insurance policy contain an "other insurance" clause. These clauses provide that if there is other insurance covering the same risk, the policy will pay amounts in excess of the amount paid by the other insurance carrier only. The Supreme Court of Ohio addressed the issue of assigning liability to multiple insurance carriers when each contains an "other insurance" clause in *Buckeye Union Ins. Co. v. State Auto. Mut. Ins. Co.*, providing:

Where two insurance policies cover the same risk and both provide that their liability with regard to that risk shall be excess insurance over other valid,

collectible insurance, the two insurers become liable in proportion to the amount of insurance provided by their respective policies.

(1977), 49 Ohio St.2d 213, 3 O.O.3d 330, 361 N.E.2d 1052, syllabus. Therefore, since both policies included an "other insurance" clause, both Westfield and Farmers were legally obligated to pay a proportionate share, but not the entire amount.

{¶ 19} The Supreme Court of Ohio has held that "[o]ne who, with knowledge of the facts and without legal liability, makes a payment of money, thereby becomes a volunteer" and that "[e]quity will not aid a volunteer." *Farm Bur. Mut. Ins. Co. v. Buckeye Union Cas. Co.* (1946), 147 Ohio St. 79, 33 O.O. 259, 67 N.E.2d 906, paragraphs six and seven of the syllabus. Furthermore,

If the policy of each of several insurers limits its liability to such proportion of a loss as the amount insured by such insurer bears to the total applicable limit of liability of all valid and collectible insurance against such loss, the payment by one insurer of more than its proportion of a loss creates no right to contribution from the other insurers.

Id. at paragraph eight of the syllabus.

{¶ 20} The Eleventh District applied the holding in *Farm Bur.* in *Buckeye Union Ins. Co. v. Allstate Ins. Co.* (Feb. 23, 1981), 11th Dist. No. 1017, 1981 WL 4451. In that case, the Eleventh District held that Buckeye Union Insurance Company was a volunteer and could not recover from the other insurance carrier, because it had paid the entire loss, even though it was not required to do so. Id.

{¶ 21} Additionally, the Eighth District has determined that an insurance company can be considered a "volunteer" when it settles a claim even though it had concluded that it had no liability in the case and that another insurance company with whom it had communicated did have liability. *Insurance Co. of N. Am. v. Travelers Ins. Co.* (1997), 118 Ohio App.3d 302, 318, 692 N.E.2d 1028.

{¶ 22} The real question here is how much knowledge is "knowledge." Westfield had been told for a period of years that there *may* have been another insurance policy that *could have potentially* offered additional coverage. This court holds this situation to be quite different from the facts considered by the Ohio Supreme Court in *Farm Bur.* and the Eleventh District in *Buckeye Union.* In each of those cases, the evidence appears to be uncontroverted that the "volunteers" had full knowledge that another insurance company had specific coverage and liability on the incident for which they had executed a settlement.

{¶ 23} In the case sub judice, Westfield had only a suggestion that another insurance company could have offered additional coverage. Even if another policy had existed, Westfield had no information as to whether the policy

covered the circumstances of Isaac's demise that would render the unknown insurance company liable.

{¶ 24} Even Farmers acknowledges the speculative nature of the information regarding whether its insurance policy would have provided additional coverage in this case. In its brief to this court, Farmers states that "Westfield *contemplated*—and so had knowledge of—other *potential* underinsured motorist coverage" and that "Westfield had express knowledge that additional underinsured motorist coverage *potentially* existed * * *." (Emphasis added.) We conclude that the *potential* existence of another insurance policy that *may or may not* provide additional insurance coverage does not constitute "knowledge" sufficient to waive an insurance company's right to contribution against another insurance company whose coverage and liability are not fully demonstrated until after a settlement has been executed.

{¶ 25} Further, we do not want to discourage the prompt settlement of insurance claims. We agree with the Fifth District when it concluded that holding that an insurance company in a situation similar to Westfield's is a volunteer "would also encourage [an insurance] carrier to wrongfully deny coverage in the hopes that another carrier would step up, admit coverage, and pay the claim, thereby absolving the obstinate carrier of any responsibility to fulfill its contractual obligations." *Westfield Ins. Co. v. Wausau Business Ins. Co.*, 5th Dist. Nos. 2002CA00138 and 2002CA00150, 2002-Ohio-7391, 2002 WL 32098117, at ¶ 87, overruled on other grounds, *In re Uninsured & Underinsured Motorist Coverage Cases*, 100 Ohio St.3d 302, 305, 2003-Ohio-5888, 798 N.E.2d 1077, at ¶ 54. The Fifth District also observed:

> From a public policy standpoint, the Ohio Supreme Court decided the *Farm Bureau* case in 1946, well before the General Assembly enacted the UM/UIM [uninsured/underinsured] statute and the Ohio Supreme Court issued its decision in the *Scott–Pontzer* [*v. Liberty Mut. Fire Ins. Co.*, (1999) 85 Ohio St.3d 660, 710 N.E.2d 1116] case. In fact, the Court now requires insurance companies to be vigilant in recognizing and fulfilling their contractual rights. See *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 695 N.E.2d 1140. Accordingly, to toll the running of prejudgment interest, insurers must make payment to injured insureds as soon as possible.

*Westfield*, 2002-Ohio-7391, at ¶ 88.

{¶ 26} For the foregoing reasons, we hold that Westfield is entitled to contribution from Farmers. Accordingly, Westfield's sole assignment of error is sustained.

{¶ 27} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

CUPP, J., concurs.

SHAW, Judge, dissenting.

{¶ 28} I respectfully disagree with the majority's reliance on a public policy rationale of encouraging settlements as the primary basis of interpreting specific documentary language, information, and events in the record indicating knowledge of the relevant circumstances in this case. In addition, I do not agree with the conclusion of Westfield and the majority that *Farm Bur. Mut. Ins. Co. v. Buckeye Union Cas. Co.* (1946), 147 Ohio St. 79, 33 O.O. 259, 67 N.E.2d 906; *Landmark Ins. Co. v. Cincinnati Ins. Co.* (Oct. 12, 2001), 11th Dist. No. 2000–P–0093, 2001 WL 1216986; and *Ins. Co. of N. Am. v. Travelers Ins. Co.* (1997), 118 Ohio App.3d 302, 692 N.E.2d 1028, which were relied upon by the trial court in its decision, can be distinguished factually from the situation in this case. On the contrary, I concur with the trial court's findings that this case is not materially distinguishable from those decisions in which courts found an insurer to be a volunteer in settling a claim. Furthermore, I believe that *Farm Bur.* still provides the controlling case law on this issue, and therefore, I would argue that this court should follow the law as established by the Supreme Court of Ohio. *Landmark*, 11th Dist. No. 2000–P–0093.

{¶ 29} In sum, I would hold that Westfield was a volunteer in this instance. Prior to any settlement, Westfield was clearly aware that there was other potential insurance coverage involved; and in fact, Westfield obtained an order requiring Troy to produce the other insurance policy on the same day that it proceeded with settlement rather than waiting for information regarding the other insurance carrier—information that Westfield clearly knew could affect the extent of its own proportionate share. Finally, although executed after the settlement, the release from Troy to Westfield specifically named Farmers Insurance Company. Under these circumstances, it is my conclusion that Westfield chose to assume the responsibility for the settlement before identifying Farmers and thus paid an amount that it was not necessarily obligated to pay.

{¶ 30} As a result, I would conclude that Westfield is not entitled to contribution from Farmers, and accordingly, I would affirm the judgment of the trial court.