DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, ProAssurance Corporation, appeals the directed verdict granted in favor of Appellees, The Medical Protective Company and Physician's Insurance Company of Ohio, by the Lorain County Court of Common Pleas. Appellant also appeals the submission of the apportionment of liability to the jury and the trial court's finding of frivolous conduct by Appellant and award of attorney fees to Appellees related thereto. We affirm in part and reverse in part.
 {¶ 2} On November 6, 2003, Appellee, The Medical Protective Company ("Med Pro") filed a declaratory judgment action in the Lorain County Court of *Page 2 
Common Pleas seeking a declaration that it had no coverage liability or duty to defend and indemnify Dr. Nangureddi Krishnan, M.D. and Nangureddi Krishnan, M.D., Inc. (collectively "Dr. Krishnan") after Dr. Krishnan was sued by Jeanne Meredith for failure to diagnose and treat her glaucoma during a 12 year time span. Med Pro, Appellee, Physician's Insurance Company of Ohio ("PICO"), and Appellant, ProAssurance Corporation ("ProAssurance") each had provided medical malpractice coverage to Dr. Krishnan during one of three successive time periods covering the twelve years Dr. Krishnan treated Ms. Meredith. Dr. Krishnan was insured by PICO from August 1988 until June 1996; by ProAssurance from June 1996 until June 1999; and by Med Pro from June 1999 through the date of Ms. Meredith's diagnosis (June 2000) and beyond. All three insurance carriers provided a defense to Dr. Krishnan in the medical malpractice action with each hiring their own attorney to represent the doctor.
 {¶ 3} Prior to Med Pro's declaratory judgment action, the three insurers attempted to settle Ms. Meredith's claim, but problems arose because the three insurers could not agree upon their proportionate share of responsibility for the claim. Ms. Meredith's expert witness opined that Dr. Krishnan had been negligent in failing to diagnose Ms. Meredith's glaucoma during all three coverage periods and that the glaucoma had progressively worsened throughout each period. PICO believed that Dr. Krishnan was not negligent in failing to diagnose Ms. Meredith's glaucoma during its coverage period, the earliest of the three. Med Pro, who *Page 3 
insured Dr. Krishnan during the last coverage period, believed that the malpractice had already occurred by the time it provided coverage and that no further harm had occurred. ProAssurance, however, who covered Dr. Krishnan in the middle time period, asserted that all three insurers were responsible and should pay equal portions of any settlement or award. When the insurers could not resolve their dispute, Med Pro filed its declaratory judgment action seeking a judgment from the court that it had no coverage liability for Ms. Meredith's claim.
 {¶ 4} On November 24, 2003, the trial court held a settlement conference during which the judicial attorney met with each of the three insurers separately. The insurers finally agreed that each insurer would pay $100,000 to Ms. Meredith. It is this agreement that is at the heart of this appeal. Appellant ProAssurance asserts that this agreement was to fully and finally resolve the dispute between the insurers while Appellees MedPro and PICO assert that each insurer agreed to deposit $100,000 into a settlement fund to settle and dismiss the malpractice action, but that the parties intended to have respective responsibilities for the settlement determined in the declaratory judgment action. PICO asserts that its counsel sent a letter to all counsel memorializing the agreement. Med Pro received the letter, but ProAssurance states that it did not.
 {¶ 5} The declaratory judgment action continued. ProAssurance filed its answer to MedPro's complaint and PICO asserted a counterclaim against MedPro *Page 4 
and a cross-claim against ProAssurance for contribution asserting that it had paid more than its share at settlement.
 {¶ 6} Prior to trial, ProAssurance filed a motion for summary judgment on the claims asserted by PICO and Med Pro arguing that PICO and Med Pro's voluntary payments to settle the malpractice action precluded them from seeking contribution as a matter of law. Attached to ProAssurance's motion were the affidavits of ProAssurance's vice president of claims and trial counsel that the insurers did not agree to reserve their rights to seek contribution. MedPro and PICO both opposed ProAssurance's motion, attaching affidavits that the parties had agreed that the pending action would proceed to apportion liability. The trial court denied ProAssurance's motion.
 {¶ 7} Trial began and over objection, the trial court permitted MedPro to amend its complaint at trial to assert claims for contribution against ProAssurance and PICO and denied ProAssurance's motion to amend its Answer and assert a counterclaim and crossclaim against the other two insurers. At the end of opening statements, ProAssurance moved the trial court for directed verdict again asserting its "volunteer" defense, which the trial court denied. Instead, after hearing evidence on the issue of the agreement, the trial court directed a verdict in favor of PICO and MedPro finding that they had appropriately preserved their right to seek contribution. Appellant appeals the directed verdicts in favor of each Appellee. *Page 5 
 {¶ 8} The trial proceeded on the issue of apportionment and after hearing evidence from each insurer's expert witness, the jury found that liability should be apportioned as follows: ProAssurance — 60%; PICO — 24%; and MedPro — 16%. Appellant moved for judgment notwithstanding the verdict, which the trial court denied. Appellant appeals the trial court's instruction to the jury to apportion the liability asserting that such apportionment is a question of law. It also appeals the denial of its motion for judgment notwithstanding the verdict related thereto.
 {¶ 9} Finally, PICO and MedPro filed motions for attorney fees related to their defense of ProAssurance's "volunteer" argument. The trial court granted the motion and awarded attorney fees to both Appellees finding that Appellant Pro Assurance's volunteer defense was frivolous. The fees awarded were based on MedPro's and PICO's submission of billing statements and affidavits as to the reasonableness of the fees claimed. Appellant appeals the trial court's finding that the volunteer argument was frivolous, the award of attorney fees, and the amount of the award.
 {¶ 10} Appellant timely appealed the trial court's decisions as set forth above, raising four assignments of error.
 First Assignment of Error "The trial court erred in directing a verdict in favor of Appellee The Medical Protective Company."
 Second Assignment of Error *Page 6 "The trial court erred in directing a verdict in favor of Appellee Physician's Insurance Company of Ohio."
 {¶ 11} Appellant asserts that the trial court erred in directing verdicts in favor of Appellees on the issue of whether Appellees were entitled to seek contribution from the other insurers after voluntarily contributing to a settlement fund that resolved the underlying medical malpractice action and without expressly reserving their right to seek contribution. Appellant asserts that the parties agreed not to seek contribution from each other when they agreed to each contribute towards settlement with Ms. Meredith. Even if they had not so agreed, Appellant asserts that PICO and MedPro are precluded from seeking contribution because they voluntarily paid more than their proportional share of the loss under the authority of Farm Bur. Mut. Auto. Ins. Co. v. BuckeyeUnion Cas. Co. (1946), 147 Ohio St. 79.
 {¶ 12} Appellees assert that they did not agree to waive their right to seek contribution, that their rights were preserved via the pending declaratory judgment action and otherwise, that they are not volunteers as defined in Farm Bur., and that the Farm Bur. determination of volunteer status does not apply because unlike the insurers in FarmBur., all three insurers here were potentially liable for the loss at the time of the settlement and, therefore, could not have voluntarily paid more than their share. Moreover, all three insurers were found actually liable for the loss by the jury. *Page 7 
 {¶ 13} The decision to grant or deny a Civ.R. 50(A) motion for directed verdict is reviewed de novo. Goodyear Tire Rubber Co. v.Aetna Cas. Surety Co., 95 Ohio St.3d 512, 2002-Ohio-2842, at ¶ 4. Directed verdict is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the non-moving party, reasonable minds could come to but one conclusion, that being in favor of the moving party. Civ.R. 50(A)(4);Goodyear at ¶ 3. Such a decision does not determine factual issues, but only questions of law, even though it is necessary to review and consider the evidence in deciding the motion. Goodyear at ¶ 4. "Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon [directed verdict].'" Osler v.City of Lorain (1986), 28 Ohio St.3d 345, 347, quoting Posin v. A.B.CMotor Court Hotel (1976), 45 Ohio St.2d 271, 275.
 {¶ 14} We begin by holding that Appellees properly preserved their right to seek contribution. The parties concede that there is not a written agreement to settle the underlying action and dismiss the declaratory judgment action. Moreover, Appellant's representative, Mr. O'Malley, acknowledged that he knew when they left the settlement conference that MedPro was going to proceed with its declaratory judgment action and that ProAssurance would be required to file an answer, which it, in fact, filed. The declaratory judgment complaint named both ProAssurance and PICO as Defendants. The complaint sought an order as to whether coverage exists under the MedPro policy and noted that a substantial *Page 8 
dispute existed between MedPro, PICO and ProAssurance with regard to liability attributable to each insurer's policy periods. PICO filed a counterclaim against MedPro and a cross-claim against ProAssurance for indemnification and unjust enrichment arguing that it was not responsible for any portion of the settlement agreement. Based on the foregoing, and under the unique circumstances of this case, it is clear that the parties were treating the action like a claim for contribution, that no agreement existed that would require MedPro and PICO to dismiss their claims, and that all parties were aware at the time they agreed to pay $100,000 each to settle the underlying action that MedPro's claims would proceed.
 {¶ 15} Having found that Appellees procedurally preserved their right to seek contribution from each other and Appellant, we now consider whether the payments by Appellee could be construed as voluntary, thereby barring Appellees from seeking contribution substantively. A "party making payment is a volunteer if, in so doing, he has no right or interest of his own to protect, and acts without obligation, moral or legal, and without being requested by anyone liable on the obligation."Aetna Cas. Sur. Co. v. Buckeye Union Cas. Co. (1952),157 Ohio St. 385, 392-93, quoting 50 American Jurisprudence 698, Section 22. A payment is not voluntary where multiple insurers are liable for the same portions of the insured's loss. See Farm Bureau, 147 Ohio St. at 90. Appellant has always maintained that all three insurers were obligated or potentially liable for the entire loss. Moreover, as discussed above, Appellees preserved their right to seek *Page 9 
contribution from each other and Appellant and therefore, had a right or interest of their own to protect.
 {¶ 16} Based on the foregoing, and viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the non-moving party, reasonable minds could come to but one conclusion, that being in favor of the moving party, that Appellees were not volunteers when they offered to contribute $100,000 towards the settlement of the underlying case.
 {¶ 17} Appellant's first and second assignments of error are overruled.
 Third Assignment of Error "The trial court erred in submitting the issue of apportionment to the jury and in denying Appellant ProAssurance Corporation's motion for Judgment Notwithstanding the Verdict."
 {¶ 18} Appellant asserts that the apportionment of liability is a question of law, especially where there was no expert who opined on this issue. According to Appellant, absent any direct authority as to how medical malpractice damages should be apportioned among successive malpractice insurers, the trial court should have adopted the time-on-the-risk method of allocation as argued in Appellant's bench memorandum and trial brief. The time-on-the-risk method apportions damages by making pro-rata allocations based on the time each insurer was exposed to risk. Appellant appeals the trial court's denial of its motion for judgment notwithstanding the verdict, which was based on the foregoing arguments. *Page 10 
 {¶ 19} Appellees assert that the Ohio courts and the Supreme Court of Ohio have refused to adopt the time-on-the-risk method of allocation. Moreover, the method would not work in the instant matter because the policies at issue were not fungible and the alleged acts and degree of malpractice were continuous and occurred at irregular intervals as the disease progressed.
 {¶ 20} As with a decision to grant or deny a new trial, the decision to grant or deny a Civ.R. 50(B) motion for judgment notwithstanding the verdict (JNOV) is reviewed de novo. Osier, 28 Ohio St.3d at 347
(equating the judgment notwithstanding the verdict to the directed verdict); Goodyear at ¶ 4 (setting forth the standard for directed verdict). JNOV is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the non-moving party reasonable minds could come to but one conclusion, that being in favor of the moving party. Civ.R. 50(B); Goodyear at ¶ 3. Such a decision does not determine factual issues, but only questions of law, even though it is necessary to review and consider the evidence in deciding the motion. Goodyear at ¶ 4. "Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon [JNOV]." Osier, 28 Ohio St.3d at 347, quoting Posin, 45 Ohio St.2d at 275.
 {¶ 21} We find that Appellant has waived the right to assert this error on appeal. Appellant failed to point to any decision of the trial court that found the issue of apportionment to be a jury question over objection or after denying a *Page 11 
motion by Appellant. Appellant concedes it made its time-on-the-risk argument in a trial brief and bench memorandum. Neither document was in the form of a motion that requested that the court (1) consider the apportionment issue as a question of law or (2) instruct the jury that it could only determine time periods of liability without considering percentages of the loss. Both documents were properly intended to educate the court on the law but did not require court action to which Appellant could assign error.
 {¶ 22} Neither has Appellant pointed this court to the specific jury instruction that it believes to be contrary to Ohio law. Appellant merely asserts that under the facts of this case, i.e., because there was no expert testimony as to exact percentages of how the damages should be apportioned, that the trial court should have used the time-on-the-risk method. Without addressing the general propriety of the time-on-the-risk method under Ohio law, we hold that the trial court did not abuse its discretion in determining and instructing the jury that it could apportion the damages based on the evidence (expert and otherwise) presented at trial. The trial court heard the evidence and found that it was sufficient to give the apportionment issue to the jury, and while Appellant asserts that the time-on-the-risk method would have been more appropriate given the evidence presented, Appellant has not provided this Court with any authority providing that the trial court's decision to give the issue to the jury was contrary to Ohio law. *Page 12 
 {¶ 23} Appellant's third assignment of error is overruled.
 Fourth Assignment of Error "The trial court erred in finding Pro Assurance's volunteer defense frivolous conduct and awarding attorney fees under R.C. 2323.51."
 {¶ 24} Appellant asserts that the trial court erred in finding its volunteer argument frivolous and in awarding attorney fees. Appellant further asserts that the amount of attorney fees was not reasonable because: (1) the fees claimed and awarded to PICO ($53,207.50) and MedPro ($35,792.00) were substantially disparate when the work done to defend against the volunteer argument should have been virtually identical; and (2) the fees claimed were not all related to work done to defend against the volunteer argument.
 {¶ 25} Appellees assert that the finding of frivolous conduct was proper because Appellant's volunteer defense was not warranted under Ohio law as Appellant failed to establish any of the three elements of "volunteer" status. Appellees also note that the trial court's judgment entry indicates that the court spent time reviewing the submitted bills and affidavits before entering judgment and that the award is wholly within the trial court's discretion.
 {¶ 26} "Appellate review of a trial court's award of attorney's fees for frivolous conduct pursuant to R.C. 2323.51 is * * * under the abuse of discretion standard, but the trial court's factual findings supporting a conclusion that frivolous conduct occurred will not be overturned if they are supported by competent, credible evidence." S S Computer Sys. Inc. v. Peng, 9th Dist. No. *Page 13 
20889, 2002-Ohio-2905, at ¶ 9, citing Wiltberger v. Davis (1996), 110 Ohio App.3d 46, 51-52.
 {¶ 27} Under the version of R.C. 2323.51 in effect at the time of the action, "conduct" is "the filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, or the taking of any other action in connection with a civil action[.]" The statute further defines "frivolous conduct" as:
 "(a) Conduct of [a] * * * party to a civil action * * * or of the [party's] counsel of record that satisfies either of the following:
 "(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal.
 "(ii) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law." R.C. 2323.51(A)(2).
 {¶ 28} An award for frivolous conduct made pursuant to R.C.2323.51(B)(1) "may be made against a party, the party's counsel of record, or both." R.C.2351(B)(4).
 {¶ 29} R.C. 2323.51(B)(1) is procedural and states:
 "Subject to divisions (B)(2) and (3), (C), and (D) of this section, at any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment in a civil action * * * the court may award court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct. The award may be assessed as provided in division (B)(4) of this section." *Page 14 
 {¶ 30} The trial court found Appellant's volunteer defense to be frivolous for the following reasons:
 1. PICO had reserved its right orally and in writing to reapportion their liability in the declaratory judgment action. The writing was a letter from PICO to MedPro and ProAssurance's counsel dated December 10, 2003, prior to PICO making its settlement payment. That this was the agreement between the parties was supported by the trial testimony of ProAssurance's client representative (Mr. O'Malley) who was present at the settlement conference.
 2. The trial court granted directed verdict in favor of PICO and MedPro because Mr. O'Malley testified at trial that he knew the action to allocate amounts paid by the insurers would go forward at the time of the settlement.
 3. "An insurer issues a reservation of rights when it files a declaratory judgment action `for purposes of adjudicating its duty to defend and/or indemnify.'" Preferred Risk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108, 112-13 and paragraph 1 of the syllabus.
 {¶ 31} We disagree with the trial court. As discussed above, under the facts of this case, Appellees properly reserved their right to seek contribution, thereby defeating the voluntary defense; however, we cannot say as a matter of law that the volunteer defense could never be appropriate in an insurance coverage case. A declaratory judgment action is filed for the purposes of adjudicating an insurer's duty to defend or indemnify as the Supreme Court noted inPreferred Risk; however, we disagree with the trial court that Preferred Risk stands for the proposition that the simple filing of a declaratory judgment action is enough to preserve such rights. Here, as discussed above, the declaratory judgment complaint noted the dispute between the various insurers as to coverage liability, the parties treated the action as if it were one for contribution, and Appellant testified that he knew at the time of the settlement that MedPro's claim would *Page 15 
continue. Accordingly, under the facts of this case, the volunteer defense could not prevail. We cannot say, however, that it could never be warranted under existing Ohio law and/or that it could not constitute an argument in good faith for extension of or modification of existing Ohio law.
 {¶ 32} Based on the foregoing, Appellant's fourth assignment of error is sustained and the judgment of the trial court finding Appellant's volunteer defense frivolous and awarding attorney fees is reversed.
Judgment affirmed in part, reversed in part, and cause remanded
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 16 
Costs taxed to both parties equally.
 MOORE, J. DICKINSON, J. concur. *Page 1